**Nos. 13-2982, 13-2078 (Cons.)**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

| | |
|---|---|
| United States of America, | ) Appeal from the United |
| | ) States District Court for |
| *Plaintiff-Appellee,* | ) the Northern District of |
| | ) Illinois, Eastern Division |
| | ) |
| v. | ) No.: 09 CR 446 |
| | ) |
| | ) The Honorable |
| Dahveed Dean, | ) Samuel Der-Yeghiayan, |
| | ) Judge Presiding |
| *Defendant-Appellant.* | ) |

---

# BRIEF OF APPELLANT DAHVEED DEAN

_____

Joshua G. Vincent (Counsel of Record)
Elyse M. Ryan
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3463

*Attorneys for Defendant-Appellant*
*Dahveed Dean*

HINSHAW & CULBERTSON LLP
        *Of Counsel*

---

**ORAL ARGUMENT REQUESTED**

130842028v1 0954004

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned, counsel of record for Dahveed Dean, furnishes the following in compliance with Circuit Rule 26.1:

I appear as court-appointed counsel for Dahveed Dean, defendant-appellant in this case.

The defendant-appellant was represented at the time of his trial and sentencing by Anthony Sassan of Chicago, Illinois. Defendant was also represented in the district court by Raymond Pijon of Chicago, Illinois.

Only the undersigned and Elyse M. Ryan will appear on behalf of the defendant-appellant in this Court.  The undersigned and Elyse M. Ryan are members of the law firm of Hinshaw & Culbertson LLP.  The undersigned was appointed to represent the defendant-appellant pursuant to the Criminal Justice Act.

July 7, 2014                               /s/Joshua G. Vincent

i

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ...................................................i

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES....................................................................................... iv

JURISDICTIONAL STATEMENT ...........................................................................1

ISSUES PRESENTED FOR REVIEW ......................................................................1

STATEMENT OF THE CASE...................................................................................2

      A.      Nature of the Case and Proceedings Below ...................................2

      B.      Statement of Facts ..........................................................................3

SUMMARY OF ARGUMENT .................................................................................17

STANDARD OF REVIEW .......................................................................................20

ARGUMENT..............................................................................................................21

I.     The District Court Erred in Failing to Sever Defendants' Cases .............21

      A.      Defendants were Improperly Joined Under Rule 8(b). ................22

      B.      Even If Joinder was Proper, Dean was Prejudiced by the
            Joint Trial...........................................................................25

II.    The Evidence Seized as a Result of Dean's October 2005 Arrest
      Should Have Been Suppressed ...................................................29

III.   The Two Guns Found in Dean's Car During an Unrelated Traffic
      Stop were Irrelevant and Inadmissible ......................................33

IV.   The Warrantless Search of Defendants' Cellphone Location Data
      Violated the Fourth Amendment ...............................................36

V.    A Hearing Should Have Been Conducted Into Whether Juror
      17's Verdict Was The Result Of Improper Influence ...............42

CONCLUSION..........................................................................................................42

130842028v1 0954004

CERTIFICATES ........................................................................................43

130842028v1 0954004

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Henry v. United States*
        361 U.S. 98 (1959)......................................................................30, 31

*Illinois v. Gates*,
        462 U.S. 213 (1983)...........................................................................30

*In re Application of United States For An Order Directing A Provider
        Of Electronic Communication Service To Disclose Records To the
        Government*,
        620 F.3d 304 (3d Cir. 2010) ........................................................36, 37

*In re Application of United States for an
        order relating to Target Phone 2*, 733 F.Supp. 2d 939 (N.D. Ill.
        2009) .................................................................................................39

*In re United States for Historical Cell Site Data*,
        724 F.3d 600 (5th Cir. 2013) .............................................................38

*Katz v. United States*,
        389 U.S. 347 (1967)...........................................................................36

*Kotteakos v. United States*
        328 U.S. 750 (1946)...........................................................................22

*Kyllo v. United States*,
        533 U.S. 27 (2001).............................................................................36

*Mapp v. Ohio*,
        367 U.S. 643 (1961).....................................................................29, 36

*Riley v. California*,
        2014 WL 2864483 (June 25, 2014) ...................................................41

*Thompson v. City of Chicago*,
        472 F.3d 444 (7th Cir. 2006) .............................................................34

*United States v. Banks*,
        405 F.3d 559 (7th Cir. 2005) .............................................................29

iv

*United States v. Briscoe,*
    896 F.2d 1476 (7th Cir. 1990) ................................................................28

*United States v. Burhannon,*
    388 F.2d 961 (7th Cir. 1968) ..........................................................31, 32

*United States v. Coleman,*
    22 F.3d 126 (7th Cir.1994) ................................................................20

*United States v. Curry,*
    79 F.3d 1489 (7th Cir. 1996) ............................................................20

*United States v. Davis,*
    2014 WL 2599917 (11th Circuit) ................................................37, 38

*United States v. Forest,*
    355 F.3d 942 (6th Cir. 2004) ............................................................38

*United States v. Gougis,*
    374 F.2d 758 (7th Cir. 1967) ............................................................24

*United States. v. Hsieh Hui Mei Chen,*
    754 F.2d 817 (9th Cir. 1985) ............................................................28

*United States v. Huebner,*
    356 F.3d 807 (7th Cir. 2004) ............................................................30

*United States v. Johnson,*
    127 F.3d 625 (7th Cir. 1997) ............................................................20

*United States v. Jones,*
    132 S. Ct. 945 (2012) ............................................................37, 40, 41

*United States v. Koen,*
    982 F.2d 1101 (7th Cir.1992) ............................................................20

*United States v. Lemmons,*
    282 F.3d 920 (7th Cir. 2002) ............................................................20

*United States v. Martin,*
    712 F.3d 1080 (7th Cir. 2013) ............................................................39

*United States v. Miller,*
    673 F.3d 688 (7th Cir. 2012) ............................................................35

130842028v1 0954004

*United States v. Monzon,*
    869 F.2d 338 (7th Cir. 1989) ...........................................................35

*United States v. Moya-Gomez,*
    860 F.2d 706 (7th Cir.1988) ............................................................20

*United States v. Olson,*
    408 F.3d 366 (7th Cir. 2005) ...........................................................30

*United States v. Pulido,*
    69 F.3d 192 (7th Cir.1995) ..............................................................20

*United States v. Schweihs,*
    971 F.2d 1302 (7th Cir. 1992) .....................................................23, 24

*United States v. Smith,*
    22 Fed. Appx. 634 (7th Cir. 2001) ..................................................29

*United States v. Souffront,*
    338 F.3d 809 (7th Cir. 2003) ...........................................................27

*United States v. Stillo,*
    57 F.3d 553 (7th Cir. 1995) .............................................................20

*United States v. Sutton,*
    742 F.3d 770 (7th Cir. 2014) ...........................................................30

*United States v. Thousand,*
    2014 WL 948328 (7th Cir. 2014) ....................................................39

*United States v. Turner,*
    93 F.3d 276 (7th Cir.1996) ..............................................................20

*United States v. Varelli,*
    407 F.2d 735 (7th Cir. 1969) ..........................................22, 23, 28, 29

*United States v. Velasquez,*
    772 F.2d 1348 (7th Cir. 1985) .........................................................21

*United States v. Warner,*
    498 F.3d 666 (7th Cir. 2007) ...........................................................21

*Wong Sun v. United States,*
    371 U.S. 471 (1963) ........................................................................29

130842028v1 0954004

*Zafiro v. United States*,
    506 U.S. 534 (1993)...................................................................................22, 28

**Statutes**

18 U.S.C. § 924(c)(1)(A)................................................................................1, 2

18 U.S.C. § 2113(a)......................................................................................1, 2

18 U.S.C. § 3231 ...............................................................................................1

28 U.S.C. § 1291 ...............................................................................................1

**Other Authorities**

Fourth Amendment .................................................................................*passim*

Fed. R. Crim. P. 8(b).............................................................................*passim*

Fed. R. Crim. P. 14(a)...........................................................................*passim*

Fed. R. Evid. 401 ........................................................................................33, 35

Fed. R. Evid. 403 .............................................................................................35

Fed. R. Evid. 404(b)....................................................................................34, 35

U.S. Const. Amend. IV ....................................................................................36

130842028v1 0954004

## JURISDICTIONAL STATEMENT

Defendant Dahveed Dean was indicted for violations of 18 U.S.C. § 2113(a) (bank robbery) and 18 U.S.C. § 924(c)(1)(A) (use of a firearm in relation to a crime of violence). A judgment of conviction was entered on September 21, 2012, and defendant was sentenced on August 29, 2013. The notice of appeal was filed on September 10, 2013.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.     Did the district court erroneously deny defendant's motion to sever his trial from his co-defendant's?

2.     Was the October 7, 2005, search of defendant's car conducted in violation of his Fourth Amendment rights?

3.     Was evidence that two guns were found in a hidden compartment in defendant's car following an unrelated traffic stop erroneously admitted and unduly prejudicial?

4.     Did the government's use of historical cell site evidence to track defendant's whereabouts on the dates of the robberies violate his Fourth Amendment rights?

5.     Was it error not to conduct a hearing to determine whether a juror's verdict was unduly influenced after she complained of being bullied and was seen outside the jury room during deliberations?

1

## STATEMENT OF THE CASE

### A.     Nature of the Case and Proceedings Below

Defendants Dahveed Dean and Terrance Daniels were charged in a six-count indictment with bank robbery, in violation of 18 U.S.C. § 2113(a), and use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). (Dkt. 1)

The indictment alleged that Dean and Daniels committed one robbery together, and then months later separately committed two other robberies of their own. Counts I and II charged both men with the August 2, 2005, armed robbery of First National Bank in South Holland. Counts III and IV charged Daniels with the August 25, 2005, armed robbery of Bank of Lincolnwood. Counts V and VI charged Dean with the December 20, 2005, armed robbery of First Bank in Chicago. (Dkt. 1)

Dean and Daniels sought separate trials but the court denied their motions and they were tried together. However, just prior to their joint trial, Daniels was removed from the courtroom and forced to watch his trial on video, leaving Dean to sit alone before the jury during the trial of all six charges.

The jury found Dean guilty on two counts of bank robbery (Counts I and V) and one count of use of a firearm (Count II); he was acquitted of the use of a firearm during the December 20, 2005, robbery (Count VI). Daniels was found guilty on two counts of robbery (Counts I and III) and two counts

2

of use of a firearm during the commission of those robberies (Counts II and IV).

### B.     Statement of Facts

### Dean's Motions to Sever

Prior to trial, Dean moved to sever the counts against him under Rules 8 and 14 on the basis that each of the three bank robberies was a separate and distinct offense, and that trying all three together would confuse the jury and inject error into the proceeding. (Dkt. 33, p. 2) Dean asserted that joinder under Rule 8 was improper where some of the charges against him did not allege any plan with or participation by Daniels. (Dkt. 33, p. 4) Dean also argued that, for the same reasons, joinder under Rule 14 was prejudicial. (Dkt. 33, p. 4) The motion to sever was denied. The court found that the defendants were charged with participating in the same series of transactions because the robberies were perpetrated by the same group of individuals and in the same manner, although there was nothing in the indictment that alleged this. (Dkt. 52, p. 9)

A second motion to sever was presented after the government disclosed that it would call witnesses to provide testimony concerning conversations in which Daniels identified Dean as a participant in the robberies. (Dkt. 120, p. 2) This motion was denied after the government indicated that it only intended to elicit testimony that implicated Daniels and that it would not elicit any information regarding Dean. (Dkt. 125, p. 1; Dkt.

216, p. 6)   During the hearing the court stated, "Motion to sever, I already ruled on it.  Motion to sever again is denied."  (Dkt. 216, p. 6)

Dean filed a third motion to sever on August 31, 2012, just before trial. (Dkt. 169, p. 1) The court denied this motion, too, stating that proper limiting instructions would be given. (Dkt. 176, p. 4)

### Daniels is Barred from the Trial

Just prior to the commencement of the trial, the district court barred Daniels from being present in the courtroom during his trial and ruled that Daniels could watch the trial on video from the MCC. (Dkt. 290, p. 8)

As a result of this ruling, Dean was the only defendant the jury saw during the entire trial.

### The August 2, 2005 Robbery of First National Bank in South Holland, Illinois

The First National Bank in South Holland, Illinois was robbed by three men on August 2, 2005. (Dkt. 294, p. 11) Two robbers entered the bank initially. Robber One walked up to the teller station of Sandra Nagel and pulled a gun on her. (Dkt. 294, p. 11) Nagel described Robber One as "short" and wearing a hat. (Dkt. 294, p. 12) Robber Two was wearing a tan colored shirt with green in it, was not wearing a hat, was taller than Robber One, weighed about 160-165 pounds, and followed Robber One to the same teller station. (Dkt. 294, p. 12, 29)

4

Nagel was ordered to get on the ground and, as she did so, Robber Three entered the bank. (Dkt. 294, p. 12) Robber Three jumped the counter. (Dkt. 294, p. 31) Nagel described Robber Three as taller than Robber Two and around 5'11". (Dkt. 294, p. 34) The robbers removed the money from the vault and drawers and then pepper-sprayed all the tellers just before they left the bank. (Dkt. 294, p. 17) The total amount taken from the bank was $46,726. (Dkt. 294, p. 42)

In exchange for a reduction in sentence, Marcus Moore pleaded guilty to two counts of bank robbery and two counts of use of a gun in commission of a bank robbery. (Dkt. 294, p. 48-49) Moore said that he, Dean and Daniels planned the August 2, 2005, robbery of First National Bank, and that Charles Vance provided him with a gun and mace. (Dkt. 294, p. 63) The plan was for Daniels to enter first, Moore second and Dean last. (Dkt. 294, p. 62)

Moore identified himself as "Robber Two" (the second robber to enter the bank) in a video still shown to the jury. (Dkt. 294, p. 61-62, 66) His role was to make sure the customers and tellers were on the ground. (Dkt. 294, p. 61-62) Moore said he is 5'9" and taller than Dean. (Dkt. 294, p. 95-96) This contradicted Nagel's testimony that "Robber Three" was taller than the other two and stood about 5'11". (Dkt. 294, p. 95-96)

130842028v1 0954004

### The August 25, 2005 Robbery of Bank of Lincolnwood in Skokie

Dean was the only defendant in the courtroom when the government presented its case against Daniels for the August 25, 2005, robbery of the Bank of Lincolnwood.

Dorothy Krol was working as a teller on the morning of August 25, 2005, when two black males wearing hats and baggy clothes ran into the Bank of Lincolnwood with weapons. (Dkt. 294, p. 189-91, 193) Robber One ran to the security guard, and Robber Two hopped over the teller line. (Dkt. 294, p. 191; Dkt. 295, p. 7) Robber One wore either a wig or a long braided hairstyle; he was also shorter than Robber Two. (Dkt. 295, p. 7) Robber One frisked the guard, took his gun and phone, and ordered him to the ground. (Dkt. 295, p. 8, 13) Meanwhile, Robber Two had the bank manager help him find the money in the vault. (Dkt. 294, p. 192) The robbers then pepper-sprayed the two tellers, the security guard and the manager and ran out of the bank. (Dkt. 294, p. 192) The amount stolen was $79,300.  (Dkt. 294, p. 207)

Peter George, a Lincolnwood police officer, was at a traffic light at Cicero and Touhy when he noticed the driver of a maroon car at the intersection whose hairstyle matched one of the suspects involved in the robbery, as described in a police radio broadcast. (Dkt. 294, p. 209-10) He began following the car, which made an evasive turn, after which Officer George activated his Mars lights to effect a stop. (Dkt. 294, p. 210) A high-speed chase ensued onto the Edens Expressway during which one of the

suspects twice pointed a gun at Officer George from the window of the getaway vehicle. (Dkt. 294, p. 213) The suspects exited at Petersen Avenue where Officer George lost them. (Dkt. 294, p. 213, 217)

James Jansen is a senior citizen who lived near where Officer George lost track of the suspects. Mr. Jansen was getting his car out of his garage when two men accosted him, bound and gagged him, and stole his car after putting a bag in the trunk. (Dkt. 294, p. 213-25)

An evidence technician, Alan Marks, testified that a can of pepper spray was recovered in the parking lot of the bank and that a skull cap, sunglasses, a wig, a glove and a Walgreen's bag were recovered in the vicinity of the bank. (Dkt. 294, p. 235-37, 241, 245-46, 276) Janet Jones, a Skokie police officer, found the getaway vehicle, as well as a handgun and a pair of gray sweat pants near 5918 Knox, close to where Mr. Jansen was accosted and his car stolen. (Dkt. 294, p. 283-85)

Gary Nolte, the bank's security guard and an off-duty Skokie police officer, also testified. (Dkt. 295, p. 4) He described the robbery, how he was disarmed and maced, and how he activated the silent alarm and radioed for assistance as soon as the robbers ran out of the bank. (Dkt. 295, p. 7-9)

### Dean is Implicated by Testimony about the August 25, 2005, Robbery

The government's next witness was LaChaun Vance, who was charged in the same series of robberies but pleaded guilty. (Dkt. 295, p. 20) The jury

7

was instructed that Vance's testimony applied to both Dean and Daniels. (Dkt. 295, p. 16) Vance then testified extensively about the August 25, 2005, robbery and the getaway car that was ditched by the robbers just before Mr. Jansen was beaten and his car stolen.

Vance said that after the August 25 robbery, Daniels called him and told him to report the rental car they had used as stolen. (Dkt. 295, p. 41, 44) According to Vance, Daniels said he got nervous after the robbery because a police car chased them and he had to pull his gun so they could escape. (Dkt. 295, p. 44-45)

Shari Young was the person who obtained the rental car for Vance that was used in the August 25 Bank of Lincolnwood robbery. (Dkt. 295, p. 109-14) The judge told the jury her testimony related only to the Bank of Lincolnwood robbery and not to Dean. (Dkt. 295, p. 115) Young said the getaway car she rented for Vance had been used by his "friend" and that the "friend" told Vance it had been stolen. (Dkt. 295, p. 119-20) Young did not know the identity of Vance's "friend." (Dkt. 295, p. 120)

Vance's aunt, Beverly Lewis, identified Dean as Vance's "friend" and said that she had seen them together multiple times. (Dkt. 295, p. 109) She identified Dean in open court. The court told the jury that Lewis's testimony related to both the August 25th robbery and to Dean. (Dkt. 295, p. 107)

Daniel McCune, an FBI Special Agent, testified after this series of witnesses. (Dkt. 295, p. 135) This time, the court instructed the jury as follows:

Members of the jury, once again, the testimony of the next witness will pertain only to the August 25, 2005, robbery of the Bank of Lincolnwood in Skokie, Illinois. Defendant Dahveed Dean is not charged with the August 25, 2005, robbery. However, as you have noticed, Agent McCune has been present throughout the trial as the agent in charge of the case, that is his right, and he will only testify right now relating to what I said. He will be testifying again subsequent to this relating to all matters.

(Dkt. 295, p. 135)

Notwithstanding the court's statement that McCune's testimony concerned only the August 25 Bank of Lincolnwood robbery, McCune proceeded to testify that he was the investigator in all three robberies and that Dean and Daniels were both targets of his investigation. (Dkt. 295, p. 136-37) Then, after recounting finger print and buccal swab evidence obtained on Daniels and Albert Jones, McCune added that he took a buccal swab from Dean, as well, and then identified Dean in front of the jury. (Dkt. 295, p. 144)

McCune was followed by Patrick Powers, a forensic scientist. (Dkt. 295, p. 148) The jury was told his testimony related only to the August 25 Bank of Lincolnwood robbery. (Dkt. 295, p. 147) When Powers' testimony ended, the judge instructed the jury that "the rest of today's witnesses will relate to the entire case, the charges in the entire case." (Dkt. 295, p. 186)

### Daniels is Implicated by Testimony about the December 20, 2005, Robbery of First Bank in Chicago

The first witness to follow the court's instruction was Detective Green, who described his surveillance of Dean and Moore on October 7, 2005, when they were seen moving a black bag from Dean's car to Moore's, meeting some

9

individuals in a van, from which they emerged carrying a pink bag, and then driving to a wig shop. (Dkt. 295, p. 187-96)

Scott Irwin identified the items that were seized from Dean's car on October 7, after Dean was stopped by Green during the surveillance and arrested. (Dkt. 295, p. 213-216) Those items included a pink pillow case, latex gloves, a skull cap, a wig, a pocket knife, keychain mace and a Nextel phone, none of which were tied to the August 25 robbery with which Daniels was charged. (Dkt. 295, p. 218-24)

The witnesses that followed Irwin all gave testimony relating only to the December 20, 2005, robbery of First Bank in Chicago, notwithstanding the court's instruction that the witnesses who were about to testify would provide evidence applicable to "the entire case, the charges in the entire case."

For example, Oscar Salgado, a teller, testified extensively about the details of the December 20, 2005, robbery with which Daniels was not charged. (Dkt. 295, p. 255-59) Salgado could not identify any of the three robbers. (Dkt. 295, p. 268) All he could say was that they were three African American males wearing black scarves, black hats or a hoodie. (Dkt. 295, p. 260-65)

Stan Stogner's testimony followed Salgado's, and was also given after the court's instruction that the evidence presented on the afternoon of September 12, 2012, pertained to the "entire case," even though it pertained only to the case against Dean for the December 20, 2005, robbery. Stogner testified that in December 2005, Dean, Moore and a third person he did not

130842028v1 0954004

know came to his house and sorted what looked like "a million dollars" in an upstairs bedroom that he let them use. (Dkt. 295, p. 234-36)

**Motion to Suppress Evidence Seized After Mr. Dean's October 7, 2005 Arrest**

Pre-trial, Dean sought to exclude certain items taken from his Chrysler auto following an arrest October 7, 2005, as well as a statement he gave following his warrantless arrest. (Dkt. 69, p. 3-4, 7) The evidence obtained from the October 7, 2005, search included the coat, pocket knife, keychain mace, pink pillow case, wig, sunglasses, latex gloves and skull cap introduced at trial. (Dkt. 295, p. 217-18)

The genesis of the October 7, 2005, arrest and ensuing search was a confidential informant interviewed by Detective Green on October 6, 2005, during an unrelated investigation. (Dkt. 69, p. 49-50) The CI was in custody for a fraud charge when the interview took place. (Dkt. 69, p. 66) Green had never spoken with the CI prior to their meeting on October 6, 2005, and the CI had never previously provided information which led to an arrest or conviction. (Dkt. 69, p. 66) Green had no prior information concerning the CI's honesty. (Dkt. 69, p. 66)

The CI told Detective Green that an individual by the name of "Davi" was going to rob a bank on October 7, 2005, and had confided in the CI that he had committed other robberies in the past. (Dkt. 69, p. 10-11, 50, 52) After the interview and the CI's release that evening, he called Green and told him that

11

he had just spotted Dean's car on the south side of Chicago. (Dkt. 69, p. 54) Green spoke with another officer and they decided to conduct surveillance on Dean the next day. (Dkt. 69, p. 55)

Agent McCune was investigating the August 25, 2005, bank robbery and knew Dean as an acquaintance of LaChaun Vance, his prime suspect in that robbery. (Dkt. 69, p. 18) McCune had no prior experience with Green's CI. (Dkt. 84, p. 10) As of October 7, 2005, McCune also had no information that Dean was involved in either the August 2, 2005, or August 25, 2005, robberies. (Dkt. 69, p. 32)

During the October 7, 2005, surveillance, Detective Green observed a gold Chrysler 300M and a green Pontiac Bonneville parked near 90th and Cottage Grove. (Dkt. 295, p. 188-89) An individual Green later identified as Marcus Moore exited the Pontiac and met up with Dean. (Dkt. 295, p. 189-90) Detective Green did not know that the individual was Marcus Moore at the time of the surveillance. (Dkt. 295, p. 197) Dean and Moore pulled a black duffel bag out of the trunk of the Chrysler and put it in the trunk of the Pontiac, and then drove off in the Pontiac. (Dkt. 295, p. 190, 199) Detective Green followed the Pontiac, but lost sight of it. (Dkt. 295, p. 192)

Agent McCune arrived downtown around mid-morning to join the surveillance and heard over the radio that they had lost visual sight of Dean and Moore. (Dkt. 69, p. 21-22) Over an hour passed before surveillance was re-established. (Dkt. 69, p. 23) In the interim, Agent McCune heard over the radio

12

that a bank was robbed on the near west side of Chicago. (Dkt. 69, p. 24) There was no evidence that Dean was involved in a robbery that day. (Dkt. 69, p. 70)

According to the radio traffic that Green testified he overheard from the surveillance team, Moore and Dean met with individuals in a blue van and then exited the van with a bag, getting back into the Pontiac. Dkt. 295, p. 192) When Detective Green later resumed surveillance of the Pontiac, it was parked on Cottage Grove near the Chrysler again. The trunks of both cars were open. (Dkt. 295, p. 193) However, Detective Green did not see if the black duffel bag was moved, and he testified that they switched vehicles and began driving the Chrysler. (Dkt. 295, p. 194)

Detective Green lost sight of Dean and Moore a second time, but testified that other surveillance teams still had eyes on them. (Dkt. 295, p. 195) No other member of the surveillance team testified as to visual contact with Dean or Moore during that time.

Detective Green next observed Dean sitting in his Chrysler outside a wig shop, and saw Moore enter and exit the shop. (Dkt. 69, p. 75; Dkt. 295, 192) Moore did not carry anything into or out of the shop. (Dkt. 69, p. 75; Dkt. 295, p. 211) At that point, a combination of different law enforcement units surrounded them and Moore and Dean were taken into custody. (Dkt. 295, p. 211)

Green never saw Dean in possession of a gun or a wig during the surveillance. (Dkt. 69, p. 70) Green said that the decision to stop the car was

130842028v1 0954004

based on the information from the CI as well as Green's observations of the car rolling through stop signs and of Dean moving from one vehicle to another. (Dkt. 85, p. 23)

Agent McCune testified that Dean signed a written consent to search the car, and that they found a pink pillow case, a wig, latex gloves, two nylon caps, and a handwritten sketch of a bank lobby. (Dkt. 69, p. 27)

The court found that the government's witnesses were credible and that there was probable cause to arrest Dean on October 7, 2005. (Dkt. 85, p. 35)

**Gun Evidence**

Over Dean's objection, Curtis Ivy, a Chicago police officer, testified that on January 3, 2006, while working as a tactical officer in the Second District, he stopped a car driven by Dean and searched it. (Dkt. 296, p. 108) During the search, Ivy found a "hidden compartment" in the car that contained two handguns. (Dkt. 296, p. 109) Photos of the guns and the secret compartment were introduced through Officer Ivy. (Dkt. 296, p. 110-11) Ivy also testified that at the station Dean said "the weapons belonged to him." (Dkt. 296, p. 112)

Over Dean's objection, Officer Alex Aranowski of the Chicago Police Department testified that he was the evidence technician who processed Dean's car on January 3, 2006. (Dkt. 296, p. 116, 118) He identified the two firearms that were recovered from the vehicle. (Dkt. 296, p. 117-19) Officer Aranowski admitted that the guns were not submitted for testing or comparison prints, fingerprint or DNA analysis. (Dkt. 296, p. 123)

14

The government introduced no evidence linking the weapons found in Dean's car on January 3, 2006, to either of the robberies with which he was charged.

**Cellular Phone Evidence**

Joseph Raschke provided expert testimony on the location of the defendants' cellphones at the time the three banks were robbed. (Dkt. 296, p. 192) Raschke said he could determine the general area of a person's cellphone at a given time based on which cell towers were being used by the phone. (Dkt. 296, p. 200) Cell site analysis cannot show who is making the calls. (Dkt. 296, p. 199)

Raschke examined a date range of July 1, 2005, to late September of 2005 for cellphone numbers purportedly linked to Daniels and Dean. (Dkt. 296, p. 201) Between 8:06 a.m. and 9:49 a.m. on August 2, 2005, the phone associated with Dean used a cell tower nearest to a residence of Dean's relative. (Dkt. 296, p. 208) From 10:38 a.m. to 10:48 a.m., the phone utilized a tower several miles south. (Dkt. 296, p. 208) And at 10:52 a.m., the phone utilized a tower directly west of the address of First National Bank in South Holland. (Dkt. 296, p. 208) The next activity on the phone occurred at 11:31 a.m., well north of that tower. (Dkt. 296, p. 209-10) Then, from 11:41 a.m. to 11:56 a.m., the phone utilized a cell tower nearest to a spot on the map Raschke identified as Marcus Moore's residence.  (Dkt. 296, p. 210)

130842028v1 0954004

Raschke also examined the use of the cellphone number attributed to Daniels on August 25, 2005. (Dkt. 296, p. 218) He claimed that the phone utilized the tower closest to the Bank of Lincolnwood at 10:14 a.m. (Dkt. 296, p. 218) From 10:30 a.m. to 10:47 a.m., the phone utilized a tower south of the bank, next to the location where James Jansen was accosted and his car stolen. (Dkt. 296, p. 219) At 10:58 a.m., the phone utilized the tower nearest to the location where Jansen's car was recovered. (Dkt. 296, p. 219) From 11:17 a.m. to 3:04 p.m., the phone utilized towers on the south side of Chicago. (Dkt. 296, p. 220)

Raschke admitted that at least as many as six towers could pick up a radio frequency from a phone, and that a cellphone does not always connect with the nearest tower. (Dkt. 296, p. 228) Which tower a cellphone uses depends on the direction the tower is facing, whether something is blocking the signal path between the phone and that particular tower and whether the tower is overloaded with other calls. (Dkt. 296, p. 228) Raschke also admitted that he did not know to whom the phone allegedly used by Dean or Daniels was registered, or the identity of the person using the phone on any particular day at any particular time. (Dkt. 296, p. 233)

The government did not obtain a warrant before it obtained the records regarding defendants' cellphone use.

**Jury Deliberation and Proceedings**

Dean adopts and incorporates by reference the portions of Daniels' statement of facts that discusses the circumstances surrounding the potential undue influence of Juror 17, as contained in Daniels' contemporaneously-filed appellant's brief.

## SUMMARY OF ARGUMENT

Dean and Daniels never should have been tried together. For starters, the indictment failed to allege any facts that linked the one robbery they were accused of committing together to either of the robberies they allegedly committed separately, nor did it allege any common plan or conspiracy. The district court plainly erred by failing to decide the motion to sever strictly on what was contained in the indictment.

Trying the defendants together was also extremely prejudicial to both men. The subliminal effect on the jury of seeing only Dean sitting at the defense table while the sensational details of the August 25 robbery were introduced – the high speed car chase, the gun play and the violent carjacking of a senior citizen – created a taint or "spillover" effect that the court's instructions could not prevent. Worse, the instructions themselves were confusing and inconsistent. The judge repeatedly switched back and forth as witnesses testified, saying some applied to Dean, some to Daniels and some to both, making it difficult to follow even on the written record. This was surely confusing for the jury.

130842028v1 0954004

In one instance, the judge told the jury that LaChaun Vance's testimony would apply to both Dean and Daniels, but then Vance testified exclusively about the August 25 robbery with which Dean was not charged. The knife of prejudice was driven home when one witness said Vance rented the getaway car for his "friend" right after another witness identified Dean as Vance's "friend." There was no one else the jury could have associated with that testimony other than Dean – the only defendant in the courtroom and the only person identified as Vance's "friend."

Dean and Daniels were both prejudiced when the judge told the jury at one point in the trial that the rest of the day's evidence pertained to the "entire case," and then permitted witness after witness to testify about only the December 20 robbery with which Dean was charged. This had to confuse the jury, which was instructed that the two men committed only one robbery together, not two.

Dean's conviction should also be overturned because illegally obtained and irrelevant evidence was admitted over his objection. The October 7, 2005, warrantless arrest and ensuing search of Dean's car, which produced the wigs, latex gloves, pillow case and mace, lacked probable cause. The police had no experience with the informant, the information he provided was highly speculative and there was nothing suspicious about Dean's activities while he was under surveillance that justified his arrest.

Likewise, the government's warrantless seizure and use of defendants' cellphone records, which allowed it to trace their purported whereabouts at the time of the robberies based on the location of their cellphone signals, was an invasion of their reasonable, Fourth Amendment expectations of privacy.

The introduction of the two guns seized from Dean's car following a totally unrelated traffic stop in January 2006 was particularly unfair. The fact that Dean had two guns in his car sometime after the robberies occurred had no tendency to prove that he committed the robberies. Nothing linked the guns to the robberies – no prints, no DNA, no witness who could say the guns were the ones used in the robberies. The government used evidence that Dean kept guns in a "secret compartment" in his car to attack his character. The gun evidence had no relevance to these charges. It was improper propensity evidence.

Finally, the district court should have conducted a hearing to determine whether the juror who complained of being bullied into her verdict had been subjected to any outside influence. The court's decision to forego a hearing simply because the court security officer said the juror was seen outside the jury room after a verdict was reached deprived defendants of any opportunity to determine if this was the only time she left the jury room and, even if she did not, whether the bullying she experienced was external.

## STANDARD OF REVIEW

Whether joinder is permitted by Rule 8 of the Federal Rules of Criminal Procedure is a question of law and, accordingly, subject to plenary appellate review. *United States v. Turner*, 93 F.3d 276, 283 (7th Cir.1996), *citing United States v. Coleman*, 22 F.3d 126, 134 (7th Cir.1994) and *United States v. Koen*, 982 F.2d 1101 (7th Cir.1992).

If joinder is proper as an initial matter, the district court's ruling on a severance motion will be overturned "only upon a showing of a clear abuse of discretion." *Id. citing United States v. Pulido*, 69 F.3d 192, 207 (7th Cir.1995) and *Coleman*, 22 F.3d at 134. To establish that a district court abused its discretion in refusing to sever the counts, a defendant must show that he suffered "actual injury" resulting from the denial of his motion. *Pulido*, 69 F.3d at 207 (*quoting United States v. Moya-Gomez*, 860 F.2d 706, 754 (7th Cir.1988). This means the defendant must show that he was unable to obtain a fair trial without a severance. *Id.; see United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995).

Rulings on the admission or exclusion of evidence are reviewed for abuse of discretion. *United States v. Johnson*, 127 F.3d 625 (7th Cir. 1997); *United States v. Curry*, 79 F.3d 1489 (7th Cir. 1996).

Whether Dean's Fourth Amendment rights were violated should be reviewed *de novo* because it involves no fact-finding and presents only a question of law. *United States v. Lemmons,* 282 F.3d 920, 924 (7th Cir. 2002) ("On

20

a district court's denial of a motion to suppress, we review the district court's

factual findings for clear error and questions of law *de novo*."

## ARGUMENT

### I.     The District Court Erred in Failing to Sever Defendants' Cases

Rule 8(b) of the Federal Rules of Criminal Procedure provides that

defendants may be charged together only "if they are alleged to have

participated in the same act or transaction or in the same series of acts or

transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). That

will ordinarily require that they be charged either as co-conspirators or as

aiders and abettors of a conspiracy. *United States v. Velasquez*, 772 F.2d 1348,

1353 (7th Cir. 1985). In determining whether there is misjoinder under Rule

8(b), a court must look to the indictment—and *only* the indictment. *United*

*States v. Warner*, 498 F.3d 666, 699 (7th Cir. 2007)

Even if joinder is proper under Rule 8(b), Rule 14 of the Federal Rules

of Criminal Procedure requires severance if a defendant would be prejudiced

by a joint trial. Fed. R. Crim. P. 14. Rule 14 states that if the joinder of

defendants in an indictment appears to prejudice a defendant or the

government, then the court may sever the defendant's trials. Fed. R. Crim. P.

14(a).

Persons charged in connection with the same crime should be tried

separately if there is a serious risk that a joint trial would prevent the jury

130842028v1 0954004

from making a reliable judgment about the guilt or innocence of one or more of the defendants. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

### A.    Defendants were Improperly Joined Under Rule 8(b).

To avoid duplicative briefing, Dean adopts, as if fully set forth in this brief, the Rule 8(b) misjoinder argument in Daniels' contemporaneously-filed appellant's brief (Arguments IA. and IB.), as it applies to the misjoinder of Counts III and IV, which charged only Daniels with the unrelated August 25, 2005, robbery. Dean supplements that argument with the following alternative argument if the Court looks beyond the four corners of the indictment to the evidence adduced at trial.

Multiple defendants who separately conspire to carry out separate illegal acts do not participate in an overall scheme or plan. *United States v. Varelli*, 407 F.2d 735, 742-43 (7th Cir. 1969). The evidence in *Varelli* showed two conspiracies: one to hijack a shipment of Polaroid equipment, and another to hijack silver shipments. *Id.* at 742. The Polaroid defendants were only involved in the act of hijacking the Polaroid equipment, and were not part of an overall scheme or plan. *Id.* at 743. Thus, the court found that there was no single, overall conspiracy, but two separate conspiracies. *Id.* at 744.

*Varelli* also analyzed the Supreme Court's decision in *Kotteakos v. United States*, where various defendants conspired with a common conspirator to obtain fraudulent loans from an agency of the United States. *Id.* at 742; *see Kotteakos*, 328 U.S. 750, 772 (1946). The Supreme Court found that each

130842028v1 0954004

agreement had its own distinct, illegal end and that each conspirator was interested solely in his or her transaction and in no way aided in procuring another conspirator's loan. *Varelli*, 407 F.2d at 742. Thus, because each transaction was separate from the others, and the conspirators in no way were working toward a common goal or plan, the Supreme Court found that the transactions represented different conspiracies and held in part that joinder of the separate conspiracies was improper. *Id.* at 745.

Here, there was no evidence that the three robberies were completed in furtherance of a larger common goal, or were completed by parties that were interested in a larger purpose. The government did not prove any connection whatsoever among the three robberies. Rather, the government sought to prove that each defendant separately participated in a second bank robbery with distinct, illegal ends that in no way depended on the outcome of the others. The parties were improperly joined under Rule 8(b).

*United States v. Schweihs*, 971 F.2d 1302, 1322 (7th Cir. 1992), is also instructive. That decision found misjoinder where two defendants conspired to complete an extortion scheme, and one defendant was charged in the same case with a second extortion outside of the conspiracy. The court based its decision on the lack of any evidence to show that the defendant involved solely in the conspiracy was in any way connected with the second extortion, or that the second extortion was part of the original conspiracy. *Id.* Thus, the

court found that the two counts charging the defendant with a second extortion were improperly joined. *Id.*

Finally, this Court has found misjoinder where the first two counts of an indictment charged a defendant and two co-defendants with crimes relating to the possession and sale of narcotics; the next two counts charged the co-defendants with "almost identical" crimes; and the final count charged the defendant alone with one of the same offenses elsewhere alleged. *United States v. Gougis*, 374 F.2d 758, 760-62 (7th Cir. 1967). Notably, that final count made no reference to either the co-defendants or the offenses alleged in the other four counts. *Id.* at 760. In light of this, the court held the final count was misjoined because there was no evidence that the crime alleged in the final count "arose out of [the defendant's] participation" in the activities charged in the first two counts. *Id.* at 760-62.

In the instant case, there was no evidence that the two robberies with which Dean was charged had any relationship to the August 25th robbery, other than being crimes of similar "character," or that both defendants were involved in a common scheme as to any but the August 2nd robbery. As in *Gougis* and *Schweihs*, the evidence related to distinct incidents and failed to demonstrate any overlap in terms of planning, execution or sharing in the proceeds of the crimes. Thus, the court could not infer any common scheme or plan from the face of the indictment *or* from the evidence.

24

This was an improper joinder because the government did not and could not prove a link between the charges in Counts I and II and those in the remaining four counts. The counts should have been severed and the defendants tried separately.

### B.    Even If Joinder was Proper, Dean was Prejudiced by the Joint Trial.

The district court's failure to sever Dean's trial from Daniels' resulted in substantial prejudice to Dean and deprived him of a fair trial.

First, Dean sat alone before the jury while extensive inflammatory evidence was introduced about the August 25 robbery purportedly committed by Daniels. The spillover effect was substantial. The first robbery the jury learned about was the August 2 robbery that Marcus Moore said Dean and Daniels committed together. (Dkt. 294, p. 63) Immediately after that string of witnesses, the jury heard about the August 25 robbery with which only Daniels was charged.

The August 25 robbery was the most sensational and violent of the three. The bank's security officer was maced. A high-speed chase on a major expressway ensued during which one of the bank robbers twice pointed a gun at police from the window of the getaway vehicle. A senior citizen was bound and gagged and had his car stolen after the robbers ditched the getaway vehicle. During all of this testimony, Dean sat alone before the jury, accused of having committed a prior robbery with Daniels in which disguises, mace and

25

guns were used. The only guns introduced at trial were the ones attributed to Dean. The jury's perception about Dean's guilt or innocence could not help but be improperly influenced by these circumstances.

Second, the court's limiting instructions were inconsistent and confusing. One example is the erroneous instruction given in the midst of the testimony about the getaway car used in the August 25 robbery. The jury was told that LaChaun Vance's testimony applied to *both* Dean and Daniels. (Dkt. 295, p. 16) Vance then testified extensively about the August 25 robbery and how Daniels called him after the robbery and told him to report the rental car they had used as stolen. (Dkt. 295, p. 41, 44) Vance's aunt, Beverly Lewis, testified following a similar instruction (Dkt. 295, p. 107) that Dean was Vance's "friend" and that they were often seen together (Dkt. 295, p. 109). Shari Young followed Lewis and told the jury that the getaway car she rented for Vance was used by his "friend" and that the "friend" told Vance it had been stolen. (Dkt. 295, p. 119-20)

The jury could not help but be confused and improperly influenced by this sequence of instructions and evidence. They were told Vance's and Lewis's testimony related to Daniels *and* Dean, but those witnesses talked mainly about the August 25 robbery, Vance's friendship with Dean and how Vance obtained a rental car from Young to use as the getaway vehicle. Then the jury was told that Young's testimony pertained only to the August 25 robbery and not to Dean, but she said Vance rented the getaway car for his

"friend," from whom it had been stolen on the day of the robbery, when the only "friend" known to the jury was Dean.

The court's instruction that all of the evidence heard on the afternoon of September 12 would pertain to the "entire case" was also confusing and misleading. (Dkt. 295, p. 186) This prejudiced Daniels because the remaining evidence that day pertained only to the December 20 robbery with which only Dean was charged. But it also had to confuse the jury about which crime the two men were accused of committing together – the August 2 robbery or the December 20 robbery, or perhaps both. This conflicted with the jury instructions given at the conclusion of the case.

The combination of Dean's status as the lone defendant sitting in the courtroom, his involvement with Daniels in the August 2 robbery, the sensational nature of the August 25 crime, the government's effort to blur the differences between the crimes and their participants, and the proof that Dean owned two guns, makes it difficult to believe that the jury could somehow segregate the evidence. Moreover, the taint of "guilt by association" was palpable and significant. These circumstances plainly deprived Dean of a *fair* trial.

Severance should be granted where there is a risk of prejudice to one party. *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003). A joint trial will always raise the specter of jury confusion, but the ultimate issue is whether the jurors could follow the court's instructions and appraise the

27

evidence against each defendant separately. *United States. v. Hsieh Hui Mei Chen*, 754 F.2d 817, 823 (9th Cir. 1985). In joint trials, courts must be particularly sensitive to the possibility that the prejudicial effect of evidence admissible only as to one defendant may have a "spillover" effect on the jury's consideration of the case against defendants to whom the evidence does not apply. *United States v. Briscoe*, 896 F.2d 1476, 1498 (7th Cir. 1990). Dangers of transference of guilt from one defendant to another across the line separating conspiracies, subconsciously or otherwise, are so great that one cannot argue that prejudice to a substantial right has not taken place. *Varelli*, 407 F.2d at 744.

The Supreme Court has recognized that the risk of prejudice will vary with each case. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). When the risk of prejudice is high, separate trials are necessary and limiting instructions may not be sufficient. Here, the evidence against one defendant created an unacceptably high inference of wrongdoing against another defendant, such that limiting instructions did not suffice, and the danger of spillover and transference of guilt was extremely high. This would not have occurred if the defendants had been tried separately.

*Varelli* is instructive. There, the indictment only called for one conspiracy, but the evidence proved that there were multiple conspiracies. 407 F.2d at 747. The jury was not properly instructed by the court that it could determine multiple conspiracies existed and find the defendants guilty, even though the indictment only called for one conspiracy. 407 F.2d at 747. This

28

Court found that without proper instruction, it was possible for the jury to transfer guilt from one defendant to another. *Id.* Thus, the court found it necessary to void the convictions of the defendants because their rights were substantially prejudiced by a single trial without proper instruction. *Id.*

The district court's limiting instructions in this case were just as problematic as in *Varelli*. It was an abuse of discretion to deny the motion to sever. The Court should order a new, separate trial for Dean.

## II.     The Evidence Seized as a Result of Dean's October 2005 Arrest Should Have Been Suppressed

Evidence obtained in contravention of the Fourth Amendment's prohibition against unreasonable searches and seizures is subject to exclusion from the prosecution's case in chief. *Mapp v. Ohio*, 367 U.S. 643 (1961). Evidence seized during an unlawful search cannot constitute proof against the victim of the search. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). Probable cause for an arrest exists when officers can reasonably believe, given all the facts and circumstances within their knowledge, that a suspect committed or was committing an offense. *United States v. Smith*, 22 Fed. Appx. 634, 635 (7th Cir. 2001).

Information from an informant can establish probable cause for an arrest only if the information is sufficiently reliable and if the informant's tip is corroborated. *Id.* at 635-36; *United States v. Banks*, 405 F.3d 559, 570 (7th Cir. 2005). When probable cause is supported by information supplied by an

130842028v1 0954004

informant, courts look to several factors, including the degree of the informant's knowledge, amount of detail, extent of corroboration by police, and the time between the tip and the corroboration. *United States v. Sutton,* 742 F.3d 770, 773 (7th Cir. 2014).

Corroboration to rehabilitate potentially unreliable tips provided by unsavory informants is essential. *Illinois v. Gates*, 462 U.S. 213, 272 (1983). The presence of facts corroborating an informant's tip is an indispensable requirement to ensure that there is no evisceration of the probable cause standard. *Id.* Under the totality of the circumstances test, reliable corroboration functions to sanitize information concerning criminal activity entering the hands of police from an unknown or tainted origin. *Id.* In addition, a newly arrested informant merits a greater dose of skepticism when assessing his credibility. *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005).

If an informant tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. *United States v. Huebner*, 356 F.3d 807, 813-14 (7th Cir. 2004). Thus, a court must consider the informant's information in amount and in degree of reliability, as well as the degree of corroboration of that information by police officers. *Id.* at 814.

In *Henry v. United States*, FBI agents were investigating a theft from an interstate shipment of whiskey. 361 U.S. 98, 99 (1959). The employer of one of the suspects told the police information "concerning the implication of [his

130842028v1 0954004

employee] with interstate shipments," but the employer never told the agents he suspected the employee of any thefts. The agents conducted surveillance and observed the employee and another man drive to an alley, walk to a gangway, and return to the car with cartons. The agents later watched the two men repeat the same actions. Though the agents could not determine the size, number, or contents of the cartons, they waved the car to a stop, and arrested the men after later learning the boxes contained stolen radios.

The court found that the arrest was unjustified. *Id.* at 104. The court reasoned that, though the employee was suspected of some implication in interstate shipments, what those shipments were and the manner in which he was implicated were unexplained and undefined. *Id.* Further, riding in a car, stopping in an alley, picking up packages, and driving away all represent acts that were outwardly innocent. *Id.* Their movements had no mark of fleeing men or men acting furtively. *Id.* The fact that packages had been stolen did not make every man who carried a package subject to arrest. *Id.*

In *United States v. Burhannon*, three informants told police that a man was involved in the sale of narcotics. 388 F.2d 961, 963 (7th Cir. 1968). Armed with this information, and knowledge of the man's prior narcotics conviction, the police began intermittent surveillance. *Id.* at 962. On the date of the man's arrest, an officer observed him exit his apartment through the rear stairs with one hand in his coat, "glance around," and enter a taxi. *Id.* Police then stopped the taxi and found heroine on the floor of the taxi. *Id.*

31

The court found that nothing in the totality of the police knowledge when the arrest was made warranted the inference that the man was in possession of narcotics. First, the tips from the three informants were all made at least a month before the arrest, and lacked particularity because they offered no dates of sales, no location of sales, no names, no identification of how or from whom the informant obtained his information, and no information that could be independently verified in any reasonable manner. *Id.* at 963. Second, while engaged in surveillance, the actions that police observed added nothing material to their knowledge. *Id.* The court found that what police discovered did not justify the arrest, and that the arrest was unlawful. *Id.*

Here, Dean was observed riding around in a car, at one point switching vehicles, and making various stops. In *Henry*, the employee was observed driving a car, stopping in an alley, and picking up packages. In *Burhannon*, the police observed the man leave his back stairs with one hand in his pocket, glance around, and get in a taxi.  In all cases, the activity observed by the police was innocent in nature and gave no indication of criminal behavior. Dean's activities on the day of his arrest in no way supported any suspicion that Dean was about to rob a bank or commit any other crime. The police did not receive sufficient information during surveillance to corroborate the confidential informant's tip, and Dean was not seen in possession of anything associated with the robberies.

32

Additionally, the information provided by the confidential informant regarding Dean was simply that he was allegedly going to rob a bank the next day, and that he had previously robbed banks using mace and wigs. The CI did not provide any information about which bank was going to be robbed, with whom Dean would rob the bank, or how the robbery would be planned or carried out. In *Burhannon*, the informants only said that the man was involved in selling narcotics, but offered no details about how he sold them, where or when he sold them, or even to whom he sold them. In both scenarios, the information provided to the police lacked any detail that would alert police observers as to when criminal activity was taking place. Thus, police had no means to corroborate the information provided by the informant. Dean's activity on the day of his arrest did not warrant an inference that he was about to rob a bank.

Therefore, not only was the CI's tip lacking in detail and unreliable because it was provided by an accused fraudster, the police failed to sufficiently corroborate the tip. The evidence seized as a result Dean's unlawful arrest on October 7, 2005, should have been suppressed.

**III.    The Two Guns Found in Dean's Car During an Unrelated Traffic Stop were Irrelevant and Inadmissible**

Relevant evidence is evidence (a) that has a tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. To be relevant,

130842028v1 0954004

evidence need not conclusively decide the ultimate issue in a case, or make the proposition appear more probable, but it must in some degree advance the inquiry. *Thompson v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006).

The guns found in Dean's car on January 3, 2006, were not relevant evidence because they did not "advance the inquiry" into whether Dean had them when the bank robberies occurred in 2005, nor did they tend to prove that he robbed the banks. The guns were found during a totally unrelated traffic stop after the robberies occurred and were not submitted for testing, fingerprint or DNA analysis. (Dkt. 296, p. 123) Thus, there was no connection between the guns found in January of 2006 and the bank robberies with which Dean was charged. The gun evidence served no purpose in the case other than to prejudice the jury against Dean because he was a young African-American male who owned guns and was accused of robbing banks.

The admission of the gun evidence also violated Rule 404(b). Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Fed. R. Evid. 404(b). To be admissible under Rule 404(b), the evidence must (1) be directed toward proving a matter in issue other than the defendant's propensity to commit the crime charged; (2) show that the prior act is similar enough and close enough in time to be relevant to the matter in issue; (3) be such that a reasonable jury could find that the act occurred and that the defendant committed the act; and (4) meet the

130842028v1 0954004

requirement of Rule 403 that the evidence's probative value not be substantially outweighed by the danger of unfair prejudice. *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir. 1989).

Evidence of prior, uncharged gun possessions by alleged felons has the potential to be used for impermissible propensity purposes. *United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012). This Court has allowed such evidence where the prior possession was recent and involved the *same* gun. *Id.* If the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably. *Id.*

The government never alleged or proved that Dean used the same gun he possessed in January of 2006 to allegedly carry out either of the robberies with which he was charged. The government used the gun evidence as impermissible propensity evidence. Simply put, the government introduced the evidence to show that because Dean possessed guns on January 3, 2006, and kept them in a secret compartment in his car, he must have used the guns to commit the bank robberies.

The district court admitted the evidence from the January 3, 2006, arrest in violation of Federal Rules of Evidence 401, 403, and 404(b), and such evidence should have been excluded because it was not relevant to whether Dean committed the robberies and was used for impermissible propensity purposes.

130842028v1 0954004

IV.    **The Warrantless Search of Defendants' Cellphone Location Data Violated the Fourth Amendment**

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. The Supreme Court has determined that a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable. *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)). The appropriate remedy for a Fourth Amendment violation is suppression of the illegally-obtained evidence. *See Mapp v. Ohio*, 367 U.S. 643 (1961).

The Third, Fifth, Sixth and Eleventh Circuits have examined whether the use of historical cell site data to determine a person's whereabouts is a search under the Fourth Amendment. *In re Application of United States For An Order Directing A Provider Of Electronic Communication Service To Disclose Records To the Government*, 620 F.3d 304, 305 (3d Cir. 2010), looked at the question under the Stored Communications Act. The court found that a cell phone customer does not voluntarily share his location information with a cellular provider because it is unlikely that cell phone customers are aware that their cell phone providers collect and store historical location information. *Id.* at 317-18. The court further noted that when a cell phone user makes a call,

130842028v1 0954004

the only information that is voluntarily conveyed to the phone company is the number that is dialed. *Id.*

The Eleventh Circuit recently decided that a subscriber has a reasonable expectation of privacy in cell site location information, and that obtaining that information without probable cause and a search warrant violates the subscriber's Fourth Amendment rights. *United States v. Davis*, 2014 WL 2599917 *10 (11th Circuit). In *Davis*, the government obtained defendant's cell site location information under the SCA and used it to show the defendant's proximity to a robbery, just like this case. *Davis*, 2014 WL 2599917 at *9. The court analyzed decisions from the Third and Fifth Circuits, as well as the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945, 949 (2012), and determined that cell site information is protected by the Fourth Amendment. *Id.* at *10.

The *Davis* court reasoned that, unlike an automobile, a cell phone can accompany its owner anywhere. *Id.* at *8. Because cell phones can be taken into private places, the exposure of cell site location information can convert what would otherwise be a private event into a public one. Thus, even one point of cell site location data can be within a reasonable expectation of privacy. *Davis* rejected an argument that cell site location information did not violate a reasonable expectation of privacy because it was not precise. To the contrary, cell site location information can place people near places where the target has a reasonable expectation of privacy, such as a dispensary of

37

medication, a place of worship, or a house of ill repute. The court found no significant distinction between information that can pinpoint the exact location and information that places a target near a specific location.

*Davis* also joined in the Third Circuit's view that cell phone customers do not voluntarily disclose or knowingly convey their location data to the service provider. *Id.* at *9-10. When a cell phone user makes a call, the only information that is voluntarily and knowingly conveyed to the phone company is the number that is dialed; there is no indication that the user making that call knows she is providing her location. *Id.* at *9. Cell site location information is within the subscriber's reasonable expectation of privacy; the government's seizure of that data without a warrant constitutes a Fourth Amendment violation. *Id.* at *10.

The Fifth Circuit has found that there is no Fourth Amendment violation in a cellular provider's production of historical cell site location information to the government. *In re United States for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013). That court found that cell site information was a business record collected and maintained by a third party, and thus it was not unconstitutional for the SCA to authorize orders for cell site information under a lesser standard than probable cause. *Id.* at 612-15.

The Sixth Circuit, in *United States v. Forest*, 355 F.3d 942, 950 (6th Cir. 2004), took a similar view as the Fifth, holding that the defendant had no legitimate expectation of privacy in his movements along public highways

130842028v1 0954004

because agents could have obtained the same information by following the defendant's car.

This Circuit has not decided whether cell tower location information or cell site analysis is protected by the Fourth Amendment. *United States   v. Thousand*, 2014 WL 948328, *3 (7th Cir. 2014) ("We have yet to address whether, notwithstanding *Smith*, cell-tower information that telecommunication carriers collect is protected by the Fourth Amendment."). However, this Court has acknowledged a difference between tracking a defendant's location to aid in effectuating an arrest and using the information to establish a link between a defendant and the scene of a crime. *United States v. Martin*, 712 F.3d 1080, 1082 (7th Cir. 2013) (court rejected defendant's argument for suppression of evidence where GPS data was used simply to aid officials in tracking the defendant to effectuate an arrest, but distinguished the case from *Jones*, where the GPS data was used to establish a link between the defendant and a cocaine stash house).

One court in this district has held that disclosure of real time cell site information cannot be authorized without a showing of probable cause. *In re Application of United States for an order relating to Target Phone 2*, 733 F.Supp. 2d 939, 943 (N.D. Ill. 2009). In that same case, the court found that the information sought by the government would allow it to obtain information concerning the location and movement from cell tower to cell tower of the individual using the cell phone, which it likened to a tracking device. The court

130842028v1 0954004

recognized that even imprecise location information constitutes tracking information.

The reasonable expectation of privacy in historical cell site location information derives from its ability to provide prolonged information regarding the defendant's movements. This was the concern expressed by Justice Sotomayor in *Jones* -- that, at the very least, long-term GPS monitoring in investigations of most offenses impinges on expectations of privacy. *Jones*, 132 S. Ct. at 955 (Sotomayor, J., concurring). There is a reasonable expectation of privacy in the sum of one's public movements, and historical cell site location information allows any person's movements to be recorded in the aggregate. Collecting data regarding the defendant's location from cell tower to cell tower effectively monitors the defendant's movements in the same way a GPS monitoring device does.

The undeniable fact that cell site location information allows the government to track a person's whereabouts from one place to another highlights the fact that the government can obtain the totality of one's movements in a given period of time through the use of historical cell site information. *Jones* makes one's whereabouts a matter of personal privacy. And because cell phone users do not know their phones can be used to track their whereabouts, the cell phone data is no different than a surreptitiously-placed GPS tracking device.

130842028v1 0954004

The Supreme Court's recent decision in *Riley v. California*, which held that police must have a warrant to search digital information on a cell phone, acknowledged historic location information can "reconstruct someone's specific movements down to the minute, not only around town but also within a particular building." *Riley v. California*, 2014 WL 2864483, *15 (June 25, 2014). The Supreme Court found that cell phones implicated privacy concerns far beyond those implicated by a wallet or a purse, because they are such a pervasive part of daily life and contain an immense amount of personal information. *Id.* at *9.

Here, law enforcement officials collected historical cell site location information for cellular phones allegedly connected with defendants Dean and Daniels for roughly a three month period. (Dkt. 296, p. 201). Such information surely revealed detailed information regarding defendants' movements over a period of time that vastly exceeded the 28 days of monitoring in *Jones. Jones*, 132 S. Ct. at 948. Neither Dean nor Daniels voluntarily gave cell site location information to their service providers, and the information was used to link them to a crime, not merely to find them for purposes of effecting an arrest. The government's warrantless seizure of historical cell site location information violated the defendants' reasonable expectation of privacy in the long term monitoring of their movements.

**V.      A Hearing Should Have Been Conducted Into Whether Juror 17's Verdict Was The Result Of Improper Influence**

Dean adopts and incorporates the argument in Daniels' contemporaneously-filed appellant's brief (Argument III) regarding the failure of the district court to hold a hearing to determine whether Juror 17 was improperly bullied into a guilty verdict.

## CONCLUSION

For all the foregoing reasons, the defendant-appellant, Dahveed Dean, respectfully requests that this Court reverse his conviction outright or, alternatively, grant him a new trial.

Respectfully submitted,

<u>/s/Joshua G. Vincent</u>
Joshua G. Vincent (Counsel of Record)
Elyse M. Ryan
Hinshaw & Culbertson LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000

*Attorneys for Defendant-Appellant Dahveed Dean*

HINSHAW & CULBERTSON LLP
          *Of Counsel*

130842028v1 0954004

## CERTIFICATES

### Fed.R.App.P.32(a)(7) Certificate

This brief complies with the type-column limitation of Fed.R.App.P.32(a)(7)(B) because this brief contains 10,467 words, excluding the parts of the brief exempted by Fed.R.App.P.32(a)(7)(B)(iii).

/s/Joshua G. Vincent

### Circuit Rule 30(d) Certificate

The undersigned certifies that all materials required by Cir.R.30(a) and (b) are included in the appendix.

/s/Joshua G. Vincent

130842028v1 0954004

**CERTIFICATE OF SERVICE**

**Certificate of Service When All Case Participants Are CM/ECF Participants**

I certify that on July 7, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


/s/Joshua G. Vincent_____

# APPENDIX

## TABLE OF CONTENTS TO THE APPENDIX

Indictment ................................................................................................................... A1-A6

Ruling on First Motion to Sever Counts ............................................................. A7-A10

Transcript of Ruling on First Motion to Sever Counts ............................................A11

Docket Entry Ruling on Motion to Suppress Evidence from October 2005 Arrest ...................A12

Transcript of Ruling on Motion to Suppress Evidence from October 2005 Arrest ........... A13-A16

Docket Entry Ruling on Motion to Suppress Gun Evidence from January 2006 Arrest... A17-A20

Docket Entry Ruling on Second Motion to Sever Counts .........................................A21

Transcript of Ruling on Second Motion to Sever Counts.........................................A22

Ruling on Motion to Exclude Gun Evidence Under 404(b) ............................................. A23-A24

Docket Entry Ruling on Third Motion to Sever Counts .................................................... A25-A28

Docket Entry Ruling on Motion to Exclude Expert Testimony ....................................... A25-A28

Transcript of Ruling on Objection to Gun Evidence from January 2006 Arrest............... A29-A31

Docket Entry Ruling on Juror Inquiry .............................................................................. A32-A34

Transcript of Ruling on Juror Inquiry............................................................................. A35-A38

Notice of Appeal .......................................................................................................................A39

Judgment in a Criminal Case ............................................................................. A40-A46

TC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA          )          No. **09 CR  446**
                                  )
        v.                        )          Violations: Title 18, United States
                                  )          Code, Sections 924(c)(1)(A),
DAHVEED DEAN,                     )          2113(a), and 2 JUDGE DER-YEGHIAYAN
TERRANCE DANIELS, and             )          MAGISTRATE JUDGE DENLOW.
ALBERT JONES                      )

## COUNT ONE

The SPECIAL FEBRUARY 2008-1 GRAND JURY charges:

On or about August 2, 2005, at South Holland, in the Northern District of Illinois, Eastern

Division,

DAHVEED DEAN, and
TERRANCE DANIELS,

defendants herein, by force, violence and by intimidation, did take from the person and presence of

bank employees approximately $46,726 belonging to and in the care, custody, control, management,

and possession of the First National Bank, located at 200 West 162nd Street, South Holland, Illinois,

the deposits of which were then insured by the Federal Deposit Insurance Corporation;

In violation of Title 18, United States Code, Sections 2113(a) and 2.

# FILED

MAY 1 2 2009 TC
May 12, 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

1

A1

## COUNT TWO

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about August 2, 2005, at South Holland, in the Northern District of Illinois, Eastern

Division,

DAHVEED DEAN, and
TERRANCE DANIELS,

defendants herein, used and carried a firearm during and in relation to a crime of violence for which

they may be prosecuted in a court of the United States, namely, bank robbery, a violation of Title 18,

United States Code, Section 2113(a), as more fully set forth in Count One of this indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

**COUNT THREE**

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about August 25, 2005, at Skokie, in the Northern District of Illinois, Eastern Division,

TERRANCE DANIELS, and
ALBERT JONES,

defendants herein, by force, violence and by intimidation, did take from the person and presence of

bank employees approximately $79,300 belonging to and in the care, custody, control, management,

and possession of the Bank of Lincolnwood, located at 8047 Skokie Boulevard, Skokie, Illinois,

the deposits of which were then insured by the Federal Deposit Insurance Corporation;

In violation of Title 18, United States Code, Sections 2113(a) and 2.

3

A3

## COUNT FOUR

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about August 25, 2005, at Skokie, in the Northern District of Illinois, Eastern Division,

TERRANCE DANIELS, and
ALBERT JONES,

defendants herein, used and carried a firearm during and in relation to a crime of violence for which

they may be prosecuted in a court of the United States, namely, bank robbery, a violation of Title 18,

United States Code, Section 2113(a), as more fully set forth in Count Three of this indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

4

A4

## COUNT FIVE

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about December 20, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

### DAHVEED DEAN,

defendant herein, by force, violence and by intimidation, did take from the person and presence of bank employees approximately $187,624 belonging to and in the care, custody, control, management, and possession of the First Bank, located at 2356 South Kedzie, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation;

In violation of Title 18, United States Code, Sections 2113(a) and 2.

5

A5

## COUNT SIX

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about December 20, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

DAHVEED DEAN,

defendant herein, used and carried a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, bank robbery, a violation of Title 18, United States Code, Section 2113(a),  as more fully set forth in Count Five of this indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.


A TRUE BILL:


_____

FOREPERSON


_____

UNITED STATES ATTORNEY

6

A6

IX.  Disclosure of Discoverable Material Under Federal Rule of Criminal
Procedure 16

Daniels has moved for disclosure of any and all evidence he is entitled to

discover under Federal Rule of Criminal Procedure 16.  Daniels has not indicated

that the Government has improperly failed to produce any discovery under Federal

Rule of Criminal Procedure 16.  The Government has stated that it has already

produced such materials and that it will continue to produce such materials as soon

as the Government becomes aware of them.  (DE 44, B).  Therefore, we deny as

moot Daniel's generalized request for a production of Rule 16 discovery.


X.  Motion for Severance of Counts

Dean has moved to sever the six counts of the indictment into three groups,

with each group relating to the commission of a single bank robbery and use of a

firearm in connection with that bank robbery.  Federal Rule of Criminal Procedure 8

(Rule 8) provides that "[t]he indictment or information may charge a defendant in

separate counts with 2 or more offenses if the offenses charged--whether felonies or

misdemeanors or both--are of the same or similar character, or are based on the same

act or transaction, or are connected with or constitute parts of a common scheme or

plan."  Fed. R. Crim. P. 8(a).  Rule 8 also provides that "[t]he indictment or

information may charge 2 or more defendants if they are alleged to have participated

7

A7

in the same act or transaction, or in the same series of acts or transactions,

constituting an offense or offenses" and that "[t]he defendants may be charged in one

or more counts together or separately. . . ." *Id.* Rule 8 has been construed "'broadly

to allow liberal joinder in order to enhance judicial efficiency.'" *United States v.*

*Warner*, 498 F.3d 666, 699 (7th Cir. 2007)(quoting *United States v. Stillo,* 57 F.3d

553, 556 (7th Cir. 1995)).

Even if joinder is appropriate under Rule 8, pursuant to Federal Rule of

Criminal Procedure 14 (Rule 14), a court can sever a defendant's case from the co-

defendants' cases or sever counts from other counts and hold separate trials "'[i]f the

joinder of offenses or defendants in an indictment, an information, or a consolidation

for trial appears to prejudice a defendant or the government . . . .'" *Id.* at 700

(quoting Fed. R. Crim. P. 14). To prevail on a Rule 14 motion for severance, the

movant must "show prejudice" and "'a district court should grant a severance under

Rule 14 only if there is a serious risk that a joint trial would compromise a specific

trial right of one of the defendants, or prevent the jury from making a reliable

judgment about guilt or innocence.'" *Id.* (quoting *Zafiro v. United States*, 506 U.S.

534, 538-39 (1993))(stating in addition that "'[a]ctual prejudice' does not exist just

because 'separate trials would have given a defendant a better opportunity for an

acquittal'" and that "the defendant must have been 'deprived of his right to a fair

8

A8

trial'")(quoting in part *United States v. Rollins*, 301 F.3d 511, 518 (7th Cir. 2002)).

Dean argues that each instance of bank robbery charged is separate and distinct from the others, and that "trying all three bank robberies together, before the same jury, is bound to inject error into the proceeding as a whole." (DE 33, Par. 2). Dean argues that since Defendants were all involved in different robberies, and the Government's discovery materials do not show that the stolen property in those robberies was shared among the Defendants, Dean should not be forced to participate in a trial that involves a bank robbery that did not relate to him since it would be highly prejudicial to his case. Dean therefore requests severance of the six counts into three groups, each representing a different bank robbery.

However, it is clear in the indictment that Defendants are charged with participating in "the same series of acts or transactions," since the bank robberies at issue are interrelated, both because they were allegedly perpetrated by the same group of individuals and because they were allegedly perpetrated in the same manner. The allegations showing that the same group of individuals committed the bank robberies at issue using a consistent *modus operandi* are sufficient to meet the joinder requirements of Rule 8. As to Dean's argument that he is charged in counts that are different from the counts in which Daniels and Jones are charged, Rule 8 specifically provides that "[a]ll defendants need not be charged in each count." Fed.

R. Crim. P. 8.  Dean has not shown that he will be prejudiced by the separate counts or that he would be denied a fair trial if all Counts of the indictment and all three Defendants are tried together.  The Seventh Circuit has indicated that "'joint trials are beneficial not only for efficiency but because they limit inconvenience to witnesses, avoid delays in bringing defendants to trial, and allow the total story to be presented to a single jury.'" *Warner*, 498 F.3d at 699 (quoting *Stillo*, 57 F.3d at 557). We also note that in the event that limiting instructions to the jury is warranted, the court can issue limiting instructions to the jury to prevent any prejudice to Dean and his co-defendants.  *Warner*, 498 F.3d at 700 (stating that "'[l]imiting instructions . . . often will suffice to cure any risk of prejudice,' and tailoring relief from prejudice is left to the district court's discretion")(quoting in part *Zafiro*, 506 U.S. at 538-39)). Therefore, we deny Dean's motion to sever.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' pretrial motions.


Samuel Der-Yeghiayan
United States District Court Judge


Dated:  February 24, 2010

1   let me see if he has copies for you.  Yes, he does.

2   Basically, this is on all three defendants' motions relating

3   to certain material and evidence and witness list and so on.

4   I am providing to all parties a copy.

5          So that you know, I've denied all the motions or

6   I've denied them as moot since the government has indicated

7   it will comply with certain requests.

8          MR. PIJON:  Judge, I don't know whether you have set

9   anything yet concerning the motion for severance if that one

10  was still --

11         THE COURT:  It's in there.  I've denied that also.

12         MR. PIJON:  Okay.

13         THE COURT:  As far as next status, if I set it 30

14  days from now or 45 days, would that give sufficient time for

15  Dean's counsel and maybe Daniels' counsel to deal with the

16  issues that are outstanding?

17         MR. CLARKE:  It would be, Judge.

18         MS. SCHNEIDER:  Yes, Judge.  Maybe 45 days just

19  because I have an intervening trial.

20         THE COURT:  That's fine.  And you need to deal with

21  a few of these issues anyhow, do a little discovery and so

22  on, so.

23         MS. SCHNEIDER:  Correct.

24         MR. PIJON:  Judge, there's also one --

25         MR. ARON:  Judge, if I can -- and I don't know if

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2**
**Eastern Division**

UNITED STATES OF AMERICA
                              Plaintiff,

v.                                          Case No.: 1:09–cr–00446
                                            Honorable Samuel Der–Yeghiayan

Dahveed Dean, et al.
                              Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Wednesday, April 13, 2011:

     MINUTE entry before the Honorable Samuel Der–Yeghiayan as to Defendant
Dahveed Dean: For the reasons stated ont he record, Defendant's motion to suppress
evidence [35] is denied. Mailed notice (mw, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

A12

```
1          THE COURT:  Anything further, government?

2          MR. IWEAGWU:  Nothing from the government, your

3    Honor.

4          THE COURT:  Thank you for testifying.  You are

5    excused.

6       (Witness excused.)

7          THE COURT:  Any other witnesses today?

8          MS. SCHNEIDER:  None for the government, your

9    Honor.

10         THE COURT:  Defense, do you have any witnesses?

11         MR. SASSAN:  I don't think so but if I could have

12   one moment.

13         THE COURT:  You'd like to consult with your client,

14   go ahead.

15         MR. SASSAN:  Thank you.

16      (Mr. Sassan and his client consulting.)

17         MR. SASSAN:  No further witnesses, Judge.  Thank

18   you.

19         THE COURT:  This is the decision of the Court

20   relating to the motion for summary -- motion to suppress:

21         Dahveed Dean filed a motion to suppress arguing that

22   his arrest was without a warrant and that any physical

23   evidence seized at the time of his arrest should be excluded.

24   A suppression hearing was held on September 28th, 2010,

25   during which Special Agent Daniel McCune of the FBI testified
```

A13

1   as to the circumstances of his involvement relating to the
2   arrest and was cross examined by defendant's original
3   counsel.

4          In addition, Detective Richard Green of the Chicago
5   Police Department testified as to the -- his knowledge of the
6   circumstances of the arrest and his involvement and was cross
7   examined by defendant's original counsel.  Near the end of
8   that suppression hearing, the defendant indicated that he
9   wanted a new attorney.  The court appointed a new attorney
10  for the defendant and the defendant's new attorney requested
11  a continuation of the suppression hearing so that he could
12  further evaluate and cross examine the government's
13  witnesses.

14         On April 7, 2011, the continued suppression hearing
15  was held and Special Agent McCune was again cross examined
16  this time by the defendant's new counsel.  In addition,
17  defendant presented himself a witness, the testimony of
18  Charles Howard, who testified that he has worked at WigTown
19  since 1999 and that only he and one other individual worked
20  in the store on the day of defendant's arrest, October 7,
21  2005, and that it was belief that no wigs were sold on that
22  date.  On that date, April 13, 2011, Detective Green was
23  cross examined by defendant's new counsel.  No further
24  witnesses were presented by either side.

25         In *Ebert versus Gaetz*, G-a-e-t-z, 610 F.3d 404, Page

A14

1   412, Seventh Circuit, 2010, the Seventh Circuit quoting the

2   United States Supreme Court in *Beck, B-e-c-k, versus Ohio*,

3   379 U.S. 89, also 85 Supreme Court 223, also 13 Law Edition

4   2d 142 in 1964 stated that, and I quote, police have probable

5   cause to make an arrest when, internal quotes, the facts and

6   circumstances within their knowledge and of which they had

7   reasonably trustworthy information were sufficient to warrant

8   a prudent man in believing that the petitioner had committed

9   or was committing an offense, end of quotation.

10          In *United States versus Bullock*, B-u-l-l-o-c-k, 632

11  F.3d 1004, Page 1022, Seventh Circuit, 2011, the Seventh

12  Circuit quoting *United States versus Carrillo*,

13  C-a-r-r-i-l-l-o, 269 -- started quote in *United States versus*

14  *Carrillo,* 269 F.3d 761, Page 766, Seventh Circuit, 2001, also

15  stated that, quotation mark, a determination of probable

16  cause is based on probabilities and, another quotation mark,

17  does not require evidence sufficient to support a conviction,

18  comma, nor even evidence demonstrating that it is more likely

19  than not that the suspect committed a crime, period, end of

20  quotation.  See also F-u-n-c-h-e-s, 327 F.3d at 586.

21          The Seventh Circuit further stated that, quotation

22  mark, to find probable cause, comma, there need only be a

23  probability or a substantial chance that criminal activity

24  exists, end of quotation mark, and it cited *Purvis,*

25  *P-u-r-v-i-s, versus O-e-s-t*, 614 F.3d 713, Pages 722 to 23,

1  Seventh Circuit, 2010.

2          The United States Supreme Court stated in

3  O-r-n-e-l-a-s versus United States, 517 U.S. 690, Page 695,

4  also cited at 116 Supreme Court 1657 and also cited at 134

5  Lawyer's Edition 2d 911, 1996, and quotations are omitted,

6  that -- quotation mark now -- probable cause is a, quotation

7  mark, commonsense, comma, nontechnical conception that deals

8  with the factual and practical considerations of everyday

9  life on which reasonable and prudent men, comma, not legal

10  technicians, comma, act, period, end of quotation mark.

11          After hearing the testimony of witnesses both on

12  September 28, 2010, and subsequent two hearings -- continued

13  hearings on April 7th, 2011, and April 13th, 2011, as

14  relating to the circumstances of the defendant's arrest, the

15  Court finds that the government's witnesses were credible and

16  that there was probable cause to arrest the defendant on

17  October 7, 2005.

18          The Court has observed the witness's testimony and

19  also both verbal and nonverbal behavior of the witnesses and

20  the arresting officers' observations, experience, assessments

21  with all the facts available to him relating to prior

22  robberies relating to the CI's statements relating to other

23  aspects and personal observations, the Court found the

24  witness credible and the Court, in doing so, made today's

25  determination.  Therefore, the motion to suppress is denied

A16

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 446 - 1 | **DATE** | 5/5/2011 |
| **CASE TITLE** | USA vs. Dahveed Dean | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Defendant's motions to suppress [32] and [34] are denied.

■[ For further details see text below.]

Docketing to mail notices.

---

### STATEMENT

This matter is before the court on Defendant Dahveed Dean's (Dean) motion to quash his 2006 arrest and suppress evidence and statements relating to his 2006 arrest (Motion to Quash and Suppress). This matter is also before the court on Dean's motion to suppress recorded calls (Motion to Suppress Recorded Calls).

With respect to the Motion to Quash and Suppress, Dean argues that the police did not have probable cause to arrest him in 2006 and that the exclusionary rule therefore applies to any evidence seized or any statements allegedly made by Dean in connection with his 2006 arrest. Dean also argues that any statements he allegedly made in connection with his 2006 arrest must be suppressed because he was never advised of his *Miranda* rights. Dean raised these arguments in criminal case number 06 CR 550, which was also assigned to this judge. The court held a suppression hearing on October 17, 2007, but shortly after that suppression hearing and before the court had ruled on the motion, Dean pled guilty to the underlying charge brought against him of being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1). Dean's guilty plea was unconditional, and therefore Dean waived the Fourth Amendment claims he raised in criminal case number 06 CR 550. *United States v. Cain*, 155 F.3d 840, 842 (7th Cir. 2004). However, Dean has re-raised

---

A17

his Fourth Amendment claims from the 2006 case in the instant 2009 action.  The parties have not provided the court with any Seventh Circuit precedent on the issue of whether Dean can raise his Fourth Amendment claims in a subsequent criminal case after entering an unconditional plea of guilty in the underlying prior criminal case.  Whether or not Dean has waived his Fourth Amendment claims as to the prior arrest, the court will make a ruling on Dean's Motion to Quash and Suppress based on the evidence presented by the parties at the suppression hearing held on October 17, 2007.

At the October 17, 2007 suppression hearing, the Government presented the testimony of Chicago Police Officers Curtis Ivy and Delwin Gadlen.  Officer Ivy testified that he spoke with one of the victims at the scene of a fight that occurred on January 3, 2006, and that the victim stated that he had been assaulted by two black males who were carrying guns.  (Tr. 10).  Officer Ivy also testified that while he was taking the victim's statement, a gold Chrysler drove by, and the victim identified the two individuals in the Chrysler as the victim's assailants.  (Tr. 10).  Officer Ivy further testified that as soon as the victim identified the occupants of the Chrysler as his assailants, Officer Ivy pursued the Chrysler in his police car, pulled the Chrysler over, and ordered Dean and a passenger to exit the Chrysler.  (Tr. 11, 12).  In addition, Officer Ivy testified that other officers arrived at the scene as Dean and the passenger exited the vehicle and that Dean and the passenger were then arrested.  (Tr. 13).  Officer Ivy further testified that the Chrysler was searched incident to the arrest and that guns were found in a trap compartment that had been built into the dashboard.  (Tr. 13-14).  Officer Ivy also testified that he advised Dean of his *Miranda* rights at the scene of the arrest and that later, at the police station, Dean admitted that the guns found in the Chrysler were his.  (Tr. 15, 16).

Officer Gadlen testified that two witnesses to a large fight, Kimberley Jones (Jones) and another female by the last name of Johnson, told Officer Gadlen that they had seen two males with guns exit a vehicle and strike an individual in the head.  (Tr. 73).  While the witnesses were giving their statements to Officer Gadlen, a gold Chrysler 300M drove by and the witnesses identified the individuals in the car as the men they had seen strike the individual.  (Tr. 74-75).  Officer Gadlen immediately sent a flash message on the radio regarding the Chrysler.  (Tr. 76-77).  Officer Gadlen also testified that he did not participate in Dean's arrest, but that he advised Dean of his *Miranda* rights later, at the police station, before Dean gave a statement indicating that the guns found in the Chrysler were his.  (Tr. 77-79).

A18

Dean presented the testimony of Jones and Laura Dunaj (Dunaj). Jones testified that she did not know Dean and that Dean was not the individual she pointed out to police officers as having a gun at the scene of the fight. Dunaj testified generally regarding the 911 calls and other transmissions that occurred on the date of Dean's arrest. As to the testimony of Jones that she did not know Dean, the Government called FBI Special Agent Dan McCune as a rebuttal witness, who testified (1) that he interviewed Jones on July 11, 2006, approximately six months after the date of Dean's arrest, (2) that Jones indicated she had seen Dean in the area of the fight, and (3) that Jones identified Dean by name in a photograph.

In *Ebert v. Gaetz*, 610 F.3d 404 (7th Cir. 2010), the Seventh Circuit stated that "[p]olice have probable cause to make an arrest when the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the arrestee] had committed or was committing an offense." *Id.* at 412 (quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). In addition, in *United States v. Bullock*, 632 F.3d 1004 (7th Cir. 2011), the Seventh Circuit indicated that "[a] determination of probable cause is based on probabilities and does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* at 1022 (citing *United States v. Funches,* 327 F.3d 582, 586 (7th Cir. 2003), which quoted *United States v. Carrillo,* 269 F.3d 761, 766 (7th Cir. 2001)). The Seventh Circuit also stated in *Bullock* that "[t]o find probable cause, there need only be a probability or a substantial chance that criminal activity exists" and that "[p]robable cause is a commonsense, nontechnical conception that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Bullock*, 632 F.3d at 1022 (citing *Purvis v. Oest,* 614 F.3d 713, 722-23 (7th Cir. 2010) and quoting *Ornelas v. United States,* 517 U.S. 690, 695 (1996)). After hearing the testimony of the witnesses and observing the demeanor of the witnesses during their testimony relating to the circumstances of Dean's arrest on January 3, 2006, the court finds that the Government's witnesses were credible, that Jones' testimony was not entirely credible in that she gave inconsistent statements regarding her knowledge of Dean, and that the testimony of Dunaj related to the timeline of events and certain communications and transmissions did not meaningfully impact upon the issue of whether there was probable cause to arrest Dean. Based upon all the evidence presented to the court, the court finds that there was probable cause to

09CR446 - 1 USA vs. Dahveed Dean            Page 3 of  4

A19

arrest Dean on January 3, 2006.

In addition, the United States Supreme Court recently held that police officers may search a vehicle incident to a lawful arrest when it is "reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Arizona v. Gant*, 129 S.Ct. 1710, 1714 (2009). Dean was identified by witnesses as an assailant carrying a weapon and was shortly thereafter seen in the Chrysler in the area of the fight. Thus, it was reasonable to believe that evidence of Dean's offense of arrest might be found in the Chrysler, and therefore the search of the Chrysler was also lawful. Further, Officer Ivy and Officer Gadlen each testified that they advised Dean of his *Miranda* rights prior to Dean's admission regarding ownership of the guns recovered from the Chrysler. *See Maryland v. Shatzer*, 130 S.Ct. 1213, 1219 (2010)(discussing rule established in *Miranda v. Arizona*, 384 U.S. 436 (1966), "that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney"). Therefore, based on the above and the totality of the record, Dean's Motion to Quash and Suppress is denied.

With respect to Dean's Motion to Suppress Recorded Calls, Dean seeks to suppress any recorded calls made by Dean between August 18, 2006 and April 5, 2007, when Dean was incarcerated at the Metropolitan Correctional Center. Dean argues that since he did not consent to the recordings or waive the confidentiality of the calls, such recordings were obtained in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, and the Fourth Amendment to the United States Constitution. The Seventh Circuit has expressly rejected such arguments, finding that prisoners do not have a reasonable expectation of privacy in calls made or received during incarceration and that a prisoner's recorded calls are admissible based on 18 U.S.C. § 2510(5)(a)(ii), which permits wiretapping "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii); *see also, e.g., United States v. Daniels*, 902 F.2d 1238, 1245 (7th Cir. 1990); *United States v. Sababu*, 891 F.2d 1308, 1328-30 (7th Cir. 1989); *United States v. Feekes*, 879 F.2d 1562, 1565-66 (7th Cir. 1989). Therefore, Dean's Motion to Suppress Recorded Calls is denied.

A20

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3**
**Eastern Division**

UNITED STATES OF AMERICA
                                        Plaintiff,

v.                                                          Case No.: 1:09–cr–00446
                                                            Honorable Samuel Der–Yeghiayan

Dahveed Dean, et al.
                                        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, February 28, 2012:

     MINUTE entry before the Honorable Samuel Der–Yeghiayan: As stated on the record, Defendant Dahveed Dean's motion to sever defendant [120] is denied. As further stated on the record, Defendant Dahveed Dean's motion to wear civilian clothing [121] is granted. Mailed notice (mw, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

A21

1    jury to say well, let's see, Daniels said that he did a bank

2    robbery with a crew, there was a high-jacking -- a

3    car-jacking and, gee, there's Mr. Jones, he's charged in this

4    robbery, he's probably the guy he's talking about.

5         MS. SCHNEIDER:  But we're not going to argue that.

6         THE COURT:  Let him finish.

7         MR. ARON:  I mean, you don't have to mention him by

8    name but it's a pretty clear connect-the-dots who they're

9    pointing to.  Sorry.

10        THE COURT:  Okay.  Go ahead.

11        MS. SCHNEIDER:  We're not -- we won't, based on

12   Mr. Sander's testimony, argue for that inference.  Our

13   evidence against Mr. Jones is essentially a cooperator and

14   the fact that his DNA was found on items left at the bank

15   robbery and that would be our argument as to Jones's guilt.

16        THE COURT:  Okay.  I will see how the questioning

17   proceeds.  If at the time I hear an objection and I think

18   it's sustainable, I'll rule on it, okay?  But right now, I

19   don't see a need to sever based on what I heard.  And the

20   alternative motion, the government has said that they're not

21   going to identify the persons.  If it comes to some questions

22   that I think it would be, you know, objectionable, you could

23   object obviously and I'll rule on it.

24        MR. ARON:  Judge, possibly could we then so as --

25   out of the presence of the jury when we get to that point,

Therefore, Dean's motion is denied as moot.


   C.  Exclusion of Rule 404(b) Testimony

   Dean seeks, pursuant to Federal Rule of Evidence 404(b) (Rule 404(b)), to bar

(1) evidence relating to his prior conviction for being a felon in possession of a

firearm in case number 06 CR 550, (2) testimony of Marcus Moore (Moore) relating

to (a) statements Dean made to him about a robbery and shooting and (b) threats

Dean allegedly made against Moore and his family (Threats), and (3) testimony from

various other witnesses relating to prior bad acts allegedly committed by Dean.

Pursuant to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not

admissible to prove the character of a person in order to show action in conformity

therewith," but such evidence may "be admissible for other purposes, such as proof

of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

mistake or accident, provided that upon request by the accused, the prosecution in a

criminal case shall provide reasonable notice in advance of trial, or during trial if the

court excuses pretrial notice on good cause shown, of the general nature of any such

evidence it intends to introduce at trial."  Fed. R. Evid. 404(b).  In determining

whether to admit Rule 404(b) evidence, a court must consider whether "(1) the

evidence is directed toward establishing a matter in issue other than the defendant's

propensity to commit the crime charged; (2) the evidence shows that the other act is

similar enough and close enough in time to be relevant to the matter in issue; (3) the

evidence is sufficient to support a jury finding that the defendant committed the

similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice." *United States v. Diekhoff*, 535 F.3d 611, 617 (7th Cir. 2008)(internal quotations omitted)(quoting *United States v. Simpson,* 479 F.3d 492, 498 (7th Cir. 2007)).

Dean argues that the testimony at issue does not fit within the permitted uses of Rule 404(b) testimony and is not admissible under the intricately related doctrine. The court notes that the Seventh Circuit has recently abolished admissibility of evidence under the intricately related, or inextricably intertwined, doctrine. *See United States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010)(stating that "the inextricable intertwinement doctrine has outlived its usefulness," and that "[h]enceforth, resort to inextricable intertwinement is unavailable when determining a theory of admissibility"). With respect to whether Dean's conviction in case number 06 CR 550 falls within the permitted uses of Rule 404(b) evidence, the Government has indicated in its filings that, at this time, it does not intend to introduce evidence of the conviction itself, but that it does intend to offer evidence relating to Dean's possession of firearms on January 3, 2006. Such evidence is admissible as direct evidence of Dean's participation in the December 2005 Robbery, which involved alleged use of the same firearms. Further, the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice to Dean.

With respect to whether Moore's testimony falls within the permitted uses of Rule 404(b) evidence, the Government indicates that it does not intend to introduce

4

A24

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 446 - 1, | **DATE** | 9/5/2012 |
| **CASE TITLE** | USA vs. Dahveed Dean | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Defendant's third motion to sever [169] is denied. Defendant's motion in limine to exclude expert testimony [170] is denied.

■[ For further details see text below.]

Docketing to mail notices.

---

## STATEMENT

This matter is before the court on Defendant Dahveed Dean's (Dean) in limine motion to exclude expert testimony and Dean's third motion to sever his trial from the trial of his co-defendant Terrance Daniels (Daniels).

### I. Motion to Exclude Expert Testimony

Dean argues that expert testimony relating to the locations of various cell phones at the time of the alleged robberies should be excluded because it is neither relevant nor reliable, and thus fails to satisfy the requirements of Federal Rule of Evidence 702 (Rule 702) and the factors set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In support of his argument, Dean contends that the Government will offer expert testimony regarding the locations of various cell phones, including Dean's cell phone, around the time of the charged bank robberies, and that such testimony is inadmissible because the testifying expert relies on the false scientific premise that data received from a single cell phone tower can be used to determine the specific location of a cell phone. Pursuant to Rule 702, an expert's testimony must be "both relevant and reliable" to be admissible. *See, e.g., Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th

A25

Cir. 2011)(citing *Daubert*, 509 U.S. at 589); *see also* Fed. R. Evid. 702 (stating that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case"). In determining whether to admit expert testimony, "the district court must ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Bielskis*, 663 F.3d at 893 (quoting *Daubert,* 509 U.S. at 589).

In response to Dean's motion, the Government indicates that it intends to call Special Agent Joseph Raschke (Agent Raschke) as an expert witness in the field of historical cell site analysis, and that based on cell site records, Agent Raschke will provide testimony regarding the general location of Dean's and others' cell phones around the time of the robbery. According to the Government, Agent Raschke has been a Federal Bureau of Investigation Agent for the past fourteen years, has received more than 350 hours of training and instruction regarding the use of cellular phones in investigations, and currently spends approximately 70% of his time analyzing cell phone records. In addition, the Government indicates that Agent Raschke has received training from Sprint-Nextel on how its cellular network operates and is familiar with the operations of similar networks, has instructed hundreds of other agents in using cell phones to aid in criminal investigations, and has been qualified as an expert in numerous other criminal cases. Based on the above, Agent Raschke is qualified to testify as an expert witness in this case.

With respect to whether Agent Raschke's testimony is reliable, according to the Government, Agent Raschke will explain to the jury the various factors that determine which cell tower a cell phone uses and will testify only regarding the general locations of certain cell phones used around the time of the alleged robberies. Such testimony is reliable. Finally, Agent Raschke's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. The general location of Dean's and others' cell phones around the time of the robberies, coupled with relevant call logs and testimony from witnesses regarding various calls allegedly made by Dean and others, will assist the jury to determine Dean's and

others' approximate locations around the time of the alleged robberies.  Therefore, Dean's motion to exclude expert testimony is denied.


II.  Motion to Sever Trial

        Dean argues that his trial should be severed from Daniels' trial, or alternatively, that a separate jury should be empaneled for each Defendant.  The court notes that it has already ruled on two prior motions to sever brought by Dean.  However, Dean essentially argues that the expected testimony by the Government's witness, Armando Sanders (Sanders), coupled with Daniels' disruptive behavior during recent court appearances warrants reconsideration of the issue.

        In support of his motion to sever, Dean contends that the robbery counts in the indictment are not linked in a any meaningful way, making joinder improper.  Federal Rule of Criminal Procedure 8 (Rule 8) provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  Rule 8 also provides that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses" and that "[t]he defendants may be charged in one or more counts together or separately. . . ."  *Id.*  Rule 8 has been construed "'broadly to allow liberal joinder in order to enhance judicial efficiency.'"  *United States v. Warner*, 498 F.3d 666, 699 (7th Cir. 2007)(quoting *United States v. Stillo,* 57 F.3d 553, 556 (7th Cir. 1995)).  As discussed in the court's prior rulings, the three bank robberies charged in the indictment are interrelated, since the same group was allegedly responsible for the robberies and each of the bank robberies was allegedly carried out in the same manner.  Thus, Dean's trial and Daniel's trial are properly joined.

        Dean also argues that he will be prejudiced by the joinder of his trial with Daniels' trial, given the expected testimony by Sanders and Daniels' disruptive behavior during recent court appearances.  Pursuant to Federal Rule of Criminal Procedure 14 (Rule 14), even if joinder is appropriate under Rule 8, a court can sever a defendant's case from the co-defendants' cases and hold separate trials "'[i]f the joinder of offenses

STATEMENT

or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government. . . .'" *Id.* at 700 (quoting Fed. R. Crim. P. 14). To prevail on a Rule 14 motion for severance, the movant must "show prejudice" and "'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993)).

      Dean contends that Sanders' testimony and Daniels' behavior will be highly prejudicial to Dean at trial. Sanders is expected to testify regarding statements Daniels allegedly made to another inmate, some of which allegedly implicate Dean in the robberies. In response to Dean's motion, the Government has indicated that it does not intend to elicit any testimony from Sanders that implicates Dean, and that Sanders' testimony will solely relate to Daniels' statements about Daniels' own involvement in the robberies. With respect to Daniels' behavior in court, the court has already indicated that if Daniels persists in his disruptive behavior, the court will exclude Daniels from the courtroom during the trial. In addition, the court will give proper limiting instructions to the jury indicating that the jury must consider each count and each defendant separately during their deliberations. Based on the above, Dean has not shown that joinder is improper, or that a joint trial presents a serious risk of prejudice to Dean. Nor has Dean shown that two separate juries should be empaneled. Therefore, Dean's third motion to sever is denied.

A28

```
 1   the record.
 2           THE WITNESS:  Officer Alex Aranowski.  A-l-e-x,
 3   A-r-a-n-o-w-s-k-i.
 4           THE COURT:  Thank you.  Government, you may
 5   proceed.
 6           MR. PARENTE:  Thank you, your Honor.
 7      ALEX ARANOWSKI, GOVERNMENT'S WITNESS, FIRST DULY SWORN
 8                      DIRECT EXAMINATION
 9   BY MR. PARENTE:
10   Q.  Good afternoon, Officer.
11   A.  Good afternoon.
12   Q.  Officer, where are you currently employed?
13   A.  Chicago Police Department.
14   Q.  And how long have you worked for the Chicago Police
15   Department?
16   A.  20 years.
17   Q.  And what is your position with the Chicago Police
18   Department?
19   A.  I'm an evidence technician with Unit 477.
20   Q.  As an evidence technician, that's an officer that comes
21   and collects evidence from crime scenes?
22   A.  Yes.
23   Q.  I'd like to focus on January 3rd of 2006, were you
24   involved in the processing of a Chrysler 300M vehicle?
25   A.  Yes.
```

1   Q.  And I'm going to show you what's already been admitted as

2   Government Exhibit Chrysler Photo 1 and Chrysler Photo 2.  Is

3   this the vehicle that you processed that day?

4   A.  Yes, sir.

5   Q.  And did you recover two firearms from that vehicle?

6   A.  Yes, sir.

7   Q.  Now in front of you next to your feet, there's a few

8   exhibits and they're going to be labeled for the court record

9   Government Exhibit Taurus 2 and Government Exhibit Lorcin.

10          THE COURT:  Thank you.

11          THE WITNESS:  Yes, sir.

12  BY MR. PARENTE:

13  Q.  Can you start with Government Exhibit Taurus 2?  Do you

14  recognize that exhibit?  And the box should be opened.  You

15  can open it.

16  A.  Can I open the box?

17  Q.  Yes.

18  A.  It's been resealed, sir.

19          THE COURT:  One second.  I think we need to open the

20  box.  Can you help here?

21          THE WITNESS:  I have it.

22          THE COURT:  One second, one second.  Come up.

23  Approach.  Do we need to do the same with the other boxes?

24          MR. PARENTE:  No.  They should both be opened.

25  Maybe the tape is sticky.

A30

1    BY MR. PARENTE:

2    Q.  Officer, is that gun safe?  Is that made safe?

3    A.  Yes, sir.

4    Q.  Okay.  And do you recognize that exhibit?

5    A.  Yes, sir.

6    Q.  And what is it?

7    A.  It's a semi-automatic firearm, P140, Lorcin.

8    Q.  Is that -- and that's one of the two firearms you

9    recovered from that vehicle?

10          THE COURT:  One second.

11          MR. SASSAN:  Could I object and have just a brief

12   sidebar before we go further with this?

13          THE COURT:  Okay.

14      (The following proceedings were had at sidebar outside

15   the hearing of the jury:)

16          THE COURT:  Are you going to talk about foundation?

17          MR. SASSAN:  Actually, what I wanted to do -- I

18   apologize.  I meant to do this before the witness took the

19   stand but I know there was an in limine motion and in limine

20   ruling about these guns.  For purposes of preserving the

21   issue on the record, I would just stand by the objections in

22   the motion regarding these guns as not being relevant or

23   identified in any of the bank robberies and --

24          THE COURT:  Okay.  Your objections are noted.  My

25   rulings on the in limine stand.

A31

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CR 446 - 1,2 | **DATE** | 9/25/2012 |
| **CASE TITLE** | USA vs. Dahveed Dean, Terrance Daniels | | |

**DOCKET ENTRY TEXT**

As stated on the record on 09/25/12 and for the reasons stated below, Government's motion to preclude juror inquiry [204] is granted and Defendant Terrance Daniels' motion for mistrial [205] is denied without prejudice. The court indicated to the parties that it would not bar any party from filing further post-trial motions relating to this issue, and the court will entertain such motions. All dates previously set remain unchanged.

■[ For further details see text below.]

Docketing to mail notices.

---

## STATEMENT

On September 21, 2012, the jury reached a verdict on all counts of the indictment, and the verdict form was signed by all twelve jurors. After reading the verdict, the court polled each of the jurors, and each of the jurors indicated in the affirmative when the court asked, "was this, and is this now, your verdict?" In addition, the jurors also affirmed the verdict verbally as a group. On the same day that the verdict was entered, a juror contacted the court's staff to inform the court that she "could not live with herself," and that she "felt bullied into making the decision" that she made. Counsel for one of the defendants informed the court that the same juror also tried to contact him. In addition, the same juror left a message with the court, stating: "I wanted to pretty much change my verdict to not guilty because I feel I was bullied and railroaded in the jury deliberation process, and I for one cannot live with the verdict . . . ." The court immediately informed all of the parties involved in the trial of the juror's communications to the court, and set a status hearing for September 24, 2012.

At the September 24, 2012 status hearing, Defendants Daniels and Dean, counsel for both Defendants, and the Government were present. The court indicated to the parties that the court was inclined to consider a limited inquiry of the juror at issue relating to the applicability of Rule of Evidence 606(b)

09CR446 - 1,2 USA vs. Dahveed Dean, Terrance Daniels    Page 1 of 3

A32

(Rule 606(b)). The Government objected to conducting an inquiry into the jury deliberation process, and indicated that it would file a memorandum in support of its objection. The Government in fact filed such a memorandum on that same date.

The court then scheduled all parties to appear for another hearing on September 25, 2012. At the September 25, 2012 hearing, Defendants indicated that inquiry of the juror at issue should be conducted, and the Government opposed any inquiry of the juror in question. The court inquired of the parties whether a limited questioning of the juror at issue would be appropriate. Counsel for Defendants requested an inquiry that, in the court's opinion, would have been an open-ended inquiry and would likely have resulted in the juror making statements relating to the jury deliberation process in violation of Federal Rule of Evidence 606(b) (Rule 606(b)). Based on all the evidence, including the actions of the juror in question and communications to the court, as indicated above, and based upon the "[s]ubstantial policy considerations" underlying Rule 606(b), as discussed in *Tanner v. United States*, 483 U.S. 107, pp-pp (1987), the court agrees with the Government that no further inquiry of the juror at issue is warranted. Therefore, the Government's motion to preclude juror inquiry is granted.

In addition, counsel for Defendant Daniels filed a motion for a mistrial on September 25, 2012, alleging that based upon information, the same juror had walked out of the jury deliberation room to the hallway, claiming to be having a panic attack. According to counsel for Defendant Daniels, it is impossible now to construct the juror's state of mind at the time of her complaint, and that failure to evaluate her condition at that time deprived the Defendants of their right to a fair and impartial jury. At the September 25, 2012 hearing, counsel for Defendant Dean join in counsel for Defendant Daniels' motion. Counsel for Defendant Daniels stated during the September 25, 2012 hearing that the information came to him from the Court Security Officer, but that he did not have the details of the incident. The Government opposed any inquiry to the juror in question. The court indicated that, based upon what has been presented, a further inquiry of the juror as to juror competence was not required, since Defendant Daniels' allegations fell far short of "substantial if not wholly conclusive evidence of incompetency." *Tanner*, 483 U.S. at XX. In addition, the court noted that "[a]llegations of the physical or mental incompetence of a juror are 'internal' rather than 'external' matters" under Rule 606(b). *Id.* at pp. Thus, the court noted that any inquiry of the

09CR446 - 1,2 USA vs. Dahveed Dean, Terrance Daniels      Page 2 of  3

A33

STATEMENT

juror at issue into the juror's competency would be barred by Rule 606(b). Based upon the limited facts presented by Defendant Daniels in the motion for mistrial, the motion is denied at this juncture without prejudice. The Government agreed that outside the context of Rule 606(b), certain inquiries may be permissible. The court indicated to the parties that it would not bar any party from filing further post-trial motions relating to this issue, and the court will entertain such motions.

 1    (The following proceedings were had in open court:)

 2          COURTROOM DEPUTY:  09 CR 446, USA versus Dahveed

 3    Dean and Terrance Daniels.

 4          MR. PARENTE:  Good afternoon, your Honor.  Chris

 5    Parente, Maggie Schneider and Heather McShain for the United

 6    States.

 7          THE COURT:  Good afternoon.

 8          MS. SCHNEIDER:  Good afternoon.

 9          MS. SASSAN:  Good afternoon, your Honor.  Anthony

10    Sassan on behalf of Dahveed Dean who is present in court.

11          THE COURT:  Mr. Clarke?

12          MR. CLARKE:  Robert Clarke on behalf of Terrance

13    Daniels.

14          THE COURT:  Good afternoon, all.  And as in the past

15    occasions, I'll ask the defendants to be seated, both

16    Mr. Daniels and Mr. Dean.

17          First, thank you all for coming on a short notice;

18    but after Mr. Clarke indicated to the Court yesterday

19    afternoon that the security officer had indicated that the

20    juror in question stepped out of the jury room and made

21    certain statements to Mr. Clarke, I made an inquiry this

22    morning to ascertain when and if the juror in question

23    stepped out of the jury room.

24          I can tell the parties that on one occasion while I

25    was in my hallway right behind this courtroom next to the

1    jury room, I personally observed the juror in question step

2    out of the room telling the security officer something to the

3    effect that she needed to get some air.  When the security

4    officer was not responsive to her statement, I heard her tell

5    the security officer something to the effect that the jury

6    has already reached a verdict so why couldn't she step out.

7              At that point, I told the security officer that she

8    could have a glass of water in the hallway and pointed to the

9    water cooler and walked away to my chambers.  I asked the

10   security officer if he knew whether, other than on that one

11   occasion where I accommodated the juror to have a glass of

12   water, the juror in question had left the jury room because

13   Mr. Clarke had raised the question yesterday that he did not

14   know.  Correct?

15             MR. CLARKE:  Absolutely, Judge.

16             THE COURT:  Okay.  He indicated that the juror in

17   question left the jury room on a second occasion once again

18   after the jury verdict had been reached and that he provided

19   a chair to the juror to sit on in the hallway while awaiting

20   for the attorneys to arrive in the courtroom for the verdict

21   to be read.

22             He also indicated that the juror had told him on

23   that second occasion that she did not want to remain in the

24   jury room with the other jurors.  That's why she had stepped

25   out.  I asked the security officer whether the juror had at

1    any time used the term that she was having a, quote/unquote,

2    panic attack as Mr. Clarke had indicated and the security

3    officer indicated that while the juror was in the hallway,

4    she said something to the effect that she was having an

5    anxiety attack or a panic attack and that she did not want to

6    be in the jury room with the other jurors but he did not

7    recall the exact words but it was something to that effect.

8         The stepping out of the jury room by the juror on

9    those two occasions happened after the jury had reached a

10   verdict in this case and while the Court was awaiting for

11   counsels to appear.  There is no evidence that there was any

12   deliberation outside her presence since that issue was raised

13   yesterday since she stepped out of the jury deliberations

14   room after the jury deliberations had concluded and the jury

15   had reached a verdict on all counts.

16        In addition, on the occasion that the Court, myself,

17   observed the juror that I referred to, the Court did not see

18   anything unusual that would raise any suggestion that there

19   was a problem in my opinion nor did the juror in question say

20   anything to the Court on that occasion or on any other

21   occasions.  The Court did not believe that the accommodating

22   by the Court of the juror's request to get some air and a

23   glass of water especially after a verdict had been reached

24   was something that needed to be brought to counsel's

25   attention at that time.

1          As you will recall, at times they asked for sodas

2    and other things and counsels indicated to my courtroom

3    deputy that the court can accommodate.  There's case law on

4    that that the Court can accommodate jurors.  But I'm bringing

5    this to the attention of the parties because of the incident

6    raised yesterday about the conversation with Mr. Clarke by

7    the security officer.

8          Based on all the facts in the record including but

9    not limited to the Court's observation of the juror in

10   question throughout the trial and at the time she stepped out

11   into the hallway as well as her ability to be polled and her

12   affirmative answer to the question as to the verdict or

13   answers to the questions to the verdict while being polled,

14   there's no indication that the juror was incompetent to

15   render a fair verdict.

16         Therefore, the Court's ruling of yesterday denying

17   the motion for mistrial at this juncture remains unchanged.

18   Of course counsels have been given a briefing schedule as to

19   post-trial motions and defense counsels have every right to

20   file any post-trial motions if they believe it's appropriate

21   and the government will be responding to those and the Court

22   will adjudicate if such motions are filed.

23         Any comments by government counsels?

24         MR. PARENTE:  No, your Honor.

25         THE COURT:  Any comments by Mr. Clarke?

A38

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 09 CR 446 |
| | ) | |
| DAHVEED DEAN, | ) | Hon. Samuel Der-Yeghiayan |
| | ) | |
| Defendant. | ) | |

**NOTICE OF APPEAL**

**NOTICE IS HEREBY GIVEN** that the Defendant in the above named case, **DAHVEED DEAN**, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the final judgment, sentence and commitment order entered in this matter on August 29, 2013.

Respectfully Submitted,

/S/: *Anthony J. Sassan*

_____
On behalf of the Defendant, DAHVEED DEAN

**NOTICE OF FILING & CERTIFICATE OF SERVICE**

The undersigned certifies that he filed this Notice of Appeal and served it on, Margaret Schneider, Assistant United States Attorney, U.S. Attorney's Office – Northern District of Illinois, 219 S. Dearborn St., Chicago, Illinois 60603, margaret.schneider@usdoj.gov using the CM/ECF system implemented by the District Court Clerk in the Northern District of Illinois on September 10, 2013.

/S/: *Anthony J. Sassan*

_____
On behalf of the Defendant, DAHVEED DEAN

Anthony J. Sassan (Atty #: 06216800)
asassan@zrfmlaw.com
ZUKOWSKI, ROGERS, FLOOD & McARDLE
Attorneys for the Defendant
50 N. Virginia Street
Crystal Lake, Illinois 60014
(815) 459-2050

A39

AO 245B    (Rev. 09/11)Judgment in a Criminal Case  Case: 1:09-cr-00446 Document: 26    Filed: 07/07/2014    Pages: 100
Sheet 1

𝓟𝓗

# UNITED STATES DISTRICT COURT

Northern  District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| Dahveed Dean | ) | Case Number:    09 CR 446-1 |
| | ) | |
| | ) | USM Number:    22050-424 |
| | ) | |
| | ) | Anthony J. Sassan |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

X was found guilty on count(s)     One, Two, and Five of the Indictment.
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery | 12/20/2005 | I |
| 18 U.S.C. § 924(c) | Carrying a Firearm in Connection with a Crime of Violence | 12/20/2005 | II |
| 18 U.S.C. § 2113(a) | Bank Robbery | 12/20/2005 | V |

    The defendant is sentenced as provided in pages 2 through ____7____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

X The defendant has been found not guilty on count(s)     Six of the Indictment

☐ Count(s) _____    ☐ is   ☐ are  dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 29, 2013
Date of Imposition of Judgment

*Samuel Der-Yeghiayan*

Signature of Judge


Samuel Der-Yeghiayan, United States District Court Judge
Name and Title of Judge


August 29, 2013
Date

A40

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 2 — Imprisonment

| | |
|---|---|
| DEFENDANT: | Dahveed Dean |
| CASE NUMBER: | 09 CR 466-1 |

Judgment — Page    2    of    7

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    300 months.

240 months on each of Counts I and V of the Indictment with said Counts to run Concurrently to one another and a term of 60 months on Count II of the Indictment with said term to run Consecutive to Counts I and V for a total term of imprisonment of 300 months.

X    The court makes the following recommendations to the Bureau of Prisons:
That the Defendant be committed to a Bureau of Prisons' facility where he can participate in a residential drug treatment program. The Court further recommends that if the aforementioned program is available, that the Defendant be committed to the Bureau of Prisons' facility in Coleman, Florida or at a facility in Arizona.

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at                       ☐ a.m.    ☐ p.m.    on                                 .

    ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 2 p.m. on                      .

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on                                to            

a                              , with a certified copy of this judgment.

                                                 
                                     UNITED STATES MARSHAL

                 By                                                    
                                     DEPUTY UNITED STATES MARSHAL

AO 245B  (Rev. 09/11) Judgment in a Criminal Case  <span style="color:blue">Document: 26</span>  <span style="color:blue">Filed: 07/07/2014</span>  <span style="color:blue">Pages: 100</span>
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT: Dahveed Dean
CASE NUMBER: 09 CR 446-1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : 5 years.
Three years on each of Counts I and V of the Indictment with said Counts to run Concurrently to one another and a term of Five years on Count II of the Indictment with said term to run Concurrent to Counts I and V for a total term of supervised release of 5 years.

 The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

X The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

X The defendant shall cooperate in the collection of DNA as directed by the probation office if such sample is authorized by statute.

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

 If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

 The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

A42

AO 245B    (Rev. 09/11 Judgment in a Criminal Case
           Sheet 3A — Supervised Release

Judgment—Page _____4_____ of _____7_____

DEFENDANT:      Dahveed Dean
CASE NUMBER:    09 CR 446-1

## ADDITIONAL SUPERVISED RELEASE TERMS

1) The Defendant shall pay any financial penalty that is imposed by this judgment, and that remains unpaid at the commencement of the term of supervised release, at a rate of 10 percent of his net monthly income.

2) Defendant shall provide his probation officer with access to any requested financial information.

3) The Defendant shall participate in an approved job skills training program at the direction of and in the discretion of the probation officer within the first 60 days of placement on supervision.

4) If the Defendant in unemployed after the first 60 days of supervision, of if unemployed for sixty days after termination or lay-off from employment, he shall perform at least twenty hours of community service work per week at the direction of and in the discretion of the United States Probation Office until gainfully employed.

A43

AO 245B (Rev. 09/08) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Case: 1:09-cr-00446 Document #: 318 Filed: 08/29/13 Page 5 of 7 PageID #:3445
Case: 13-2885 Document: 26 Filed: 07/07/2014 Pages: 100

Judgment — Page 5 of 7

DEFENDANT: Dahveed Dean
CASE NUMBER: 09 CR 446-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 300.00 | $ 0.00 | $ 233,850.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **First National Bank** |  | $46,726.00 |  |
| 200 West 162nd Street |  |  |  |
| South Holland, IL 60473 |  |  |  |
| **Fist Bank** |  | $187,124.00 |  |
| 2356 South Kedzie |  |  |  |
| Chicago, IL 60623 |  |  |  |

| TOTALS | $ | $ 233,850.00 |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

X The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    X the interest requirement is waived for the ☐ fine X restitution.

    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A44

AO 245B    (Rev. 09/08 Judgment in a Criminal Case
          Sheet 6 — Schedule of Payments

Case: 1:09-cr-00446 Document #: 318 Filed: 08/29/13 Page 6 of 7 PageID #:3446
Case: 13-1482    Document: 26    Filed: 07/07/2014    Pages: 100

Judgment — Page    6    of    7

DEFENDANT:        Dahveed Dean
CASE NUMBER:      09 CR 4461

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☒  Payment of        $234,150.00        due immediately, balance due

    ☐  not later than                    , or
    ☒  in accordance    ☐ C,   ☐ D,   ☐ E, or   ☒ F below; or

**B**  ☐  Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☒  Special instructions regarding the payment of criminal monetary penalties:

    The Defendant shall pay any financial penalty that is imposed by this judgment, and that remains unpaid at the commencement of the term of supervised release, at a rate of 10 percent of his net monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

    See Page 6A - Schedule of Payments for details. (Page 7 of 7)

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

A45

AO 245B   (Rev. 09/11 Judgment in a Criminal Case
Sheet 6A — Schedule of Payments

Case: 1:09-cr-00446 Document #: 318 Filed: 08/29/13 Page 7 of 7 PageID #:3447
Case: 13-2982   Document: 26   Filed: 07/07/2014   Pages: 100

Judgment—Page ___7___ of ___7___

DEFENDANT:        Dahveed Dean
CASE NUMBER:      09 CR 446-1

## ADDITIONAL DEFENDANTS AND CO-DEFENDANTS HELD JOINT AND SEVERAL

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| 09 CR 446 - 1 Dahveed Dean | $46,726.00 | $46,726.00 | First National Bank |
| 09 CR 446 - 2 Terrance Daniels | $46,726.00 | $46,726.00 | First National Bank |
| 08 CR 105 Marcus Moore *If found Liable* | $46,726.00 | $46,726.00 | First National Bank |
| 09 CR 446 - 1 Dahveed Dean | $187,124.00 | $187,124.00 | First Bank |
| 06 CR 935 Maurice Wilborn | $187,124.00 | $187,124.00 | First Bank |
| 08 CR 105 Marcus Moore *If found Liable* | $187,124.00 | $187,124.00 | First Bank |

A46