No. 13-2078

# United States Court of Appeals
# for the Seventh Circuit

UNITED STATES,

*Plaintiff-Appellee,*

v.

TERRANCE DANIELS ET AL.

*Defendants-Appellants.*

**On Appeal From The United States District Court
For The Northern District of Illinois
Case No. 09-cr-00446
The Honorable Samuel Der-Yeghiayan Presiding**

**BRIEF AND REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT TERRANCE DANIELS**
[Oral Argument Requested]

Sallie G. Smylie (Counsel of Record)
Christa C. Cottrell
Anne I. Salomon
Nicholas F. Wasdin
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
(312) 862-2000

*Counsel for Defendant-Appellant,
Terrance Daniels*

July  7, 2014

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:  **13-2078**

Short Caption:  **United States v. Daniels et al.**

The undersigned counsel for defendant-appellant furnishes the following statement in compliance with Circuit Rule 26.1:

1. The full name of every party that the attorney represents in this case:

   **Terrance Daniels**

2. Said party is not a corporation.

3. The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the District Court or before an administrative agency or are expected to appear for the party in this Court):

   **Kirkland and Ellis LLP**

   **Robert G. Clarke (withdrawn)**

Dated: July 7, 2014

/s/ *Sallie G. Smylie*
Sallie G. Smylie (Counsel of Record)
Christa C. Cottrell
Anne I. Salomon
Nicholas F. Wasdin
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
ssmylie@kirkland.com

*Counsel for Defendant-Appellant,*
*Terrance Daniels*

i

# <u>TABLE OF CONTENTS</u>

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ..................................................... i

TABLE OF AUTHORITIES ................................................................................. v

REQUEST FOR ORAL ARGUMENT ......................................................................... 1

STATEMENT OF JURISDICTION .......................................................................... 2

ISSUES PRESENTED FOR REVIEW ........................................................................ 3

    1.    Federal Rule of Criminal Procedure 8 permits joinder of defendants in a single indictment if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  The indictment in this case charged three defendants with counts stemming from three separate bank robberies and did not charge a conspiracy or contain any factual allegations connecting the robberies or defendants.  Did the District Court err in refusing to sever the defendants' trial? ........................................ 3

    2.    The Sixth Amendment and Due Process Clauses of the United States Constitution grant a criminal defendant the right to be present at trial.  After Daniels gave non-responsive answers to judicial questioning at three of fifteen pre-trial hearings, the District Court barred Daniels from attending his trial.  Did the District Court's decision violate Daniels' constitutional rights? ............ 3

    3.    A panic attack forced a juror to leave the deliberation room. Hours after rendering the verdict, that same juror informed the District Court that she had been "bullied" and "railroaded" into reaching her verdict.  At a post-trial hearing, the District Court noted that it was unclear whether the juror was exposed to external influence or threats of physical violence.  Did the District Court err in refusing to undertake a limited inquiry into the source and severity of the reported bullying? ................................... 3

STATEMENT OF THE CASE ................................................................................ 4

    A.    Defendants Are Improperly Joined In A Single Indictment And The District Court Denies Severance. ................................................. 4

    B.    Daniels Is Improperly Excluded From Trial In Violation Of The Sixth Amendment ................................................................. 5

C.    The District Court Issues An Erroneous And Misleading Jury Instruction. ................................................... 9

D.    The District Court Fails To Conduct A Limited Inquiry Into Reported Instances Of Juror Misconduct. ............................... 10

SUMMARY OF THE ARGUMENT .......................................... 13

STANDARDS OF REVIEW ..................................................... 15

ARGUMENT ......................................................................... 16

I.     THE DISTRICT COURT'S REFUSAL TO SEVER IMPROPERLY-JOINED DEFENDANTS DEPRIVED DANIELS OF A FAIR TRIAL. .......... 16

A.    There Was Error In Joining Daniels And Dean In A Single Indictment. ........................................................... 17

B.    The District Court Erred By Denying Dean's Motion For Severance. .............................................................. 19

C.    Daniels Suffered Actual Prejudice Depriving Him Of The Right To A Fair Trial. ........................................................ 19

II.    THE DISTRICT COURT VIOLATED DANIELS' SIXTH AMENDMENT RIGHT TO ATTEND TRIAL. ................................. 21

A.    Daniels' Pre-trial Conduct Did Not Constitute An Implied Voluntary Waiver. ..................................................... 23

B.    No Controlling Public Interest Demanded Daniels' Trial To Be Conducted In His Absence. ............................................ 32

C.    Daniels' Exclusion From Trial Was Not Harmless. ............. 34

III.   THE DISTRICT COURT ERRED BY REFUSING TO CONDUCT A LIMITED INQUIRY INTO THE SOURCE AND SEVERITY OF REPORTED JUROR MISCONDUCT. ......................................... 35

IV.   THE DISTRICT COURT ERRED IN PERMITTING THE INTRODUCTION OF HISTORICAL CELL SITE LOCATION DATA IN VIOLATION OF THE FOURTH AMENDMENT. ................... 41

CONCLUSION ...................................................................... 41

CERTIFICATE OF COMPLIANCE WITH RULE 32 ...................... 42

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30 ......... 43

CIRCUIT RULE 31(e) CERTIFICATION ................................... 44

CERTIFICATE OF SERVICE ................................................................................. 45

TABLE OF CONTENTS FOR REQUIRED SHORT APPENDIX ............................ 46

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Miller*,
   346 F.3d 315 (2d Cir. 2003) ................................................................38

*Chapman v. California*,
   386 U.S. 18 (1967) ................................................................................34

*Illinois v. Allen*,
   397 U.S. 337 (1970) ..................................................................... passim

*Kentucky v. Stincer*,
   482 U.S. 730 (1987) ..............................................................................21

*Tatum v. United States*,
   703 A.2d 1218 (D.C. 1997) ..................................................... 23, 24, 35

*United States v. Benabe*,
   654 F.3d 753 (7th Cir. 2011) ..................................................... passim

*United States v. Brantley*,
   733 F.2d 1429 (11th Cir. 1984) ..........................................................36

*United States v. Briggs*
   291 F.3d 958 (7th Cir. 2002) ...................................................... 36, 37

*United States v. Cain*,
   No. 94-CR-483, 1995 WL 290414 (N.D. Ill. May 10, 1995).............18

*United States v. Crutcher*,
   405 F.2d 239 (2d Cir. 1968) ..............................................................35

*United States v. Eberhart*,
   434 F.3d 935 (7th Cir. 2006) ..............................................................20

*United States v. Gagnon*,
   470 U.S. 522 (1985) ..............................................................................21

*United States v. Gio*,
   7 F.3d 1279 (7th Cir. 1993) ................................................................15

*United States v. Lakhani*,
   480 F.3d 171 (3d Cir. 2007) ...............................................................38

*United States v. Lanas*,
   324 F.3d 894 (7th Cir. 2003) ..............................................................16

*United States v. Lane*,
   474 U.S. 438 (1986) ........................................................................ 20, 21

*United States v. McClinton*,
   135 F.3d 1178 (7th Cir. 1998) .............................................................36

*United States v. Olson*,
   450 F.3d 655 (7th Cir. 2006) ......................................................... 20, 21

*United States v. Recendiz*,
   557 F.3d 511 (7th Cir. 2009) ...............................................................15

*United States v. Shakelford*,
   777 F.2d 1141 (6th Cir. 1985) .............................................................36

*United States v. Stillo*,
   57 F.3d 553 (7th Cir. 1995) ............................................................ 17, 18

*United States v. Todosijevic*,
   161 F.3d 479 (7th Cir. 1998) ...............................................................15

*United States v. Tolivier*
   541 F.2d 958 (2d Cir. 1976) ................................................................34

*United States v. Torres-Chavez*,
   744 F.3d 988 (7th Cir. 2014) ...............................................................38

*United States v. Troutman*,
   546 F. Supp. 2d 610 (N.D. Ill. 2008) ...................................................17

*United States v. Vasquez-Ruiz*,
   502 F.3d 700 (7th Cir. 2007) ...............................................................16

*United States v. Velasquez*,
   772 F.2d 1348 (7th Cir. 1985) ................................................. 16, 17, 18

*United States v. Ward*,
   598 F.3d 1054 (8th Cir. 2010) .............................................................34

*United States v. Watkins*,
   983 F.2d 1413 (7th Cir. 1993) ...................................................... passim

**Statutes**

18 U.S.C. § 2113(a) ...............................................................................2, 4

18 U.S.C. § 3231 .......................................................................................2

18 U.S.C. § 924(c)(1)(A) .......................................................................2, 4

28 U.S.C. § 1291 .......................................................................................2

**Other Authorities**

U.S. Const. amend. VI. .............................................................................21

**Rules**

Federal Rule of Criminal Procedure 14 ............................................. 5, 16

Federal Rule of Criminal Procedure 8 ............................................ passim

Federal Rule of Evidence 606(b) ............................................ 37, 38, 40

## REQUEST FOR ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Seventh Circuit Rule 34(f), oral argument is requested, as the Defendants-Appellants believe it would assist the Court in resolution of this appeal.

## STATEMENT OF JURISDICTION

This is a direct appeal from a judgment of conviction in a criminal case entered against Defendant-Appellant Terrance Daniels in the United States District Court for the Northern District of Illinois.  A grand jury sitting in that district indicted Daniels, Dahveed Dean, and Albert Jones for three counts of bank robbery and three counts of use of a firearm in furtherance of a crime of violence, all in violation of 18 U.S.C. § 2113(a) and § 924(c)(1)(A).  *See* SA 1-6.[1]

The District Court had jurisdiction over these charges pursuant to 18 U.S.C. § 3231.  A jury found Daniels guilty of two counts of robbery and two counts of use of a firearm in furtherance of a crime of violence.  A jury also found co-defendant Dean guilty of two counts of robbery and one count of the firearm charge.  On May 2, 2013, Daniels was sentenced to serve 751 months in prison.  SA 7-9, S. Tr. at 53-54.  The judgment in this case was entered May 7, 2013.  SA 10-15.  Daniels filed a timely notice of appeal on May 17, 2013.  SA 16.  The jurisdiction of United States Court of Appeals for the Seventh Circuit is founded upon 28 U.S.C. § 1291.

---

[1]  The following abbreviations are used herein: "SA" for the required short appendix bound with this brief (*see* Circuit Rule 30(a)); "App." for the separate appendix; "Dkt." for the District Court docket (Case No. 1:09-cr-00446); "Hr'g Tr." for transcripts of pre-trial and post-trial hearings; "Tr." for the trial transcript; and "S. Tr." for the sentencing transcript.

## ISSUES PRESENTED FOR REVIEW

1.      Federal Rule of Criminal Procedure 8 permits joinder of defendants in a single indictment if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  The indictment in this case charged three defendants with counts stemming from three separate bank robberies and did not charge a conspiracy or contain any factual allegations connecting the robberies or defendants.  Did the District Court err in refusing to sever the defendants' trial?

2.      The Sixth Amendment and Due Process Clauses of the United States Constitution grant a criminal defendant the right to be present at trial.  After Daniels gave non-responsive answers to judicial questioning at three of fifteen pre-trial hearings, the District Court barred Daniels from attending his trial.  Did the District Court's decision violate Daniels' constitutional rights?

3.      A panic attack forced a juror to leave the deliberation room.  Hours after rendering the verdict, that same juror informed the District Court that she had been "bullied" and "railroaded" into reaching her verdict.  At a post-trial hearing, the District Court noted that it was unclear whether the juror was exposed to external influence or threats of physical violence.  Did the District Court err in refusing to undertake a limited inquiry into the source and severity of the reported bullying?

## STATEMENT OF THE CASE[2]

### A.    Defendants Are Improperly Joined In A Single Indictment And The District Court Denies Severance.

In 2009, a six-count indictment charged Defendants-Appellants Terrance Daniels and Dahveed Dean along with co-defendant Albert Jones[3] with three counts of bank robbery under 18 U.S.C. § 2113(a) and three counts of the use of a firearm in furtherance of a violent crime under 18 U.S.C. § 924(c)(1)(A). SA 1-6. The charges in this indictment arose from three bank robberies that occurred in various locations in the Chicagoland area in late 2005.

Nothing on the face of the indictment connects the three robberies. Each robbery allegedly took place in a geographically distinct location: South Holland, Illinois (a far south Chicago suburb), the Lawndale neighborhood (on the southwest side of the city), and Skokie, Illinois (a north Chicago suburb). *See id.* No two individual defendants were charged together in more than one robbery count:[4]

| Count I | Dahveed Dean & Terrance Daniels |
| Count III | Albert Jones & Terrance Daniels |
| Count V | Dahveed Dean |

The indictment sets forth only the following details for each robbery charge: the

---

[2]   To avoid duplicative briefing, Daniels incorporates Dean's statement of facts regarding the cellular phone evidence.

[3]   Co-defendant Albert Jones accepted a plea deal, and is not part of this appeal.

[4]   Each bank robbery relates to two counts of the indictment—one for bank robbery and one for the corresponding use of a firearm in furtherance of a crime of violence. *See* SA 1-6. For brevity's sake, this brief addresses the two charges together.

date, address, and jurisdiction of the robbery; the amount of money taken by force or intimidation; the names of the individuals allegedly involved; the fact that the money was FDIC insured; and the allegation that a firearm was used in furtherance of a violent crime. *See id.* The indictment alleges no additional information connecting the robberies or defendants. Nor does the indictment include a conspiracy charge. *See id.*

Because the indictment does not link the alleged crimes or defendants together, Dean moved on January 29, 2010, to sever the counts and defendants pursuant to Federal Rule of Criminal Procedure 8 and 14. App. 1, Dkt. 33. The motion argued that joinder of the counts and defendants in a single indictment was improper because the robberies were unconnected. *Id.* Nevertheless, on February 24, 2010, the District Court denied the motion to sever, concluding it is "clear in the indictment that Defendants are charged with participating in 'the same series of acts or transactions' since the bank robberies at issue are interrelated, both because they were allegedly perpetrated by the same group of individuals and because they were allegedly perpetrated in the same manner." App. 15, Dkt. 52 at 9. The District Court further found that "[t]he allegations showing that the same group of individuals committed the bank robberies at issue using a consistent *modus operandi* are sufficient to meet the joinder requirements of Rule 8." *Id.*

### B. Daniels Is Improperly Excluded From Trial In Violation Of The Sixth Amendment.

Prior to juror selection, the District Court took the extraordinary step of excluding Daniels from attending his own trial. App. 50, Sept. 5, 2012 Hr'g Tr. at

5

29; App. 53-60, Sept. 10, 2012 Tr. at 3-10.  According to the District Court, this measure was based on a concern that Daniels' conduct at trial may "taint the jury and…require a new trial."  App. 55, Sept. 10, 2012 Tr. at 5.  The District Court made alternative arrangements for Daniels to watch the trial via a live video feed at the Metropolitan Correctional Center.  App. 50-51, Sept. 5, 2012 Hr'g Tr. at 29-30; App. 60, Sept. 10, 2012 Tr. at 10; App. 21, Dkt. 177.

In the three years before trial, the Court held fifteen pre-trial hearings. Daniels sat silently at ten of these hearings, did not attend one due to inclement weather, and did not attend another due to illness.  Feb. 24, 2010 Hr'g Tr. at 2; Sept. 28, 2011 Hr'g Tr. at 2-3.  The District Court's determination that Daniels waived his Sixth Amendment right to attend trial was based on his non-responsive answers to the District Court's questions at the remaining three hearings.  App. 54, Sept. 10, 2012 Tr. at 4.

The first such hearing, on August 2, 2012, was held in response to Daniels' request to proceed pro se.  Aug. 2, 2012 Hr'g Tr. at 10.  The District Court questioned Daniels regarding his desire to waive his right to counsel.  *Id.* at 10-11. In response, Daniels read a "conditional acceptance" statement.[5]  *Id.*  Daniels

---

[5]  An example of Daniels' "conditional acceptance" statement, the essence of which was an objection to the District Court's jurisdiction, is as follows: "I conditionally accept your offer upon proof claim that counsel or co-counsel is not needed here today.  I am very competent to handle my own proceedings.  And upon the moving party to present an original accusatory criminal instrument for my review and inspection and upon proof of claim that further proceedings pending my private administrative remedy would set off, settle and close this matter making any other further proceedings of this court moot." Aug. 2, 2012 Hr'g Tr. at 9.

recited a variation of this "conditional acceptance" statement several times during this hearing, always in response to the District Court's questions and never once out of turn. *Id.* at 7-15. After noting that Daniels' statement was similar to the "boilerplate language" previously read in the same courtroom by other "prison inmates," the Court encouraged Daniels to "continue with [his] recital." *Id.* at 9, 12. Then, drawing an immediate comparison to other purportedly "sovereign" defendants, the Court warned Daniels' attorney that "any indication [Daniels] will be disruptive at trial" may result in his exclusion from the courtroom. *Id.* at 10, 16. Finding Daniels' answers to be "non-responsive," the District Court also denied his request to proceed pro se. *Id.* at 10, 15-16.

At a hearing on August 29, 2012, Daniels raised his hand after the District Court asked whether there was "anything else we need to address today." Aug. 29, 2012 Hr'g Tr. at 3. The District Court denied Daniels' request to speak at the hearing, explaining that the Court does not "entertain questions from defendants who are represented by counsel." *Id.* Still wishing to proceed pro se, Daniels informed the Court that he was "not represented by [the appointed attorney]." *Id.* The District Court denied Daniels' request to speak and stated that "there will be no addressing the Court then by defendants unless their lawyer addresses the Court." *Id.* at 3-4. At the conclusion of the hearing, Daniels twice asked the Court whether he was being denied the right to speak on his own behalf. *Id.* at 6. The Court responded that "[t]here will be no discussions" and Daniels was removed from the courtroom. *Id.*; App. 50, Sept. 5, 2012 Hr'g Tr. at 29.

At the next pre-trial hearing on September 5, 2012, Daniels sat silently in the courtroom. App. 22-45, Sept. 5, 2012 Hr'g Tr. at 1-24. Nevertheless, the Court proceeded to raise with Daniels' attorney whether Daniels would be civil in the courtroom. *Id.* at App. 45-46. Daniels' attorney responded that Daniels had a right to be present in the courtroom and asked the Court to "just leave it at that at this point." *Id.* The District Court refused to "leave it at that," and instead insisted on addressing the issue directly with Daniels. *Id.* The Court again warned Daniels that if he became disruptive, the Court would have "no alternative" but to exclude him from trial. *Id.* at App. 47. The Court then asked Daniels if he had "anything to say about that," to which Daniels responded by reading a "conditional acceptance" statement. *Id.* at App. 47-48. The Court informed Daniels that he had the right to address the Court in that fashion, but encouraged Daniels to provide further clarification as to what he was trying to communicate. *Id.* at App. 48. After Daniels again responded by reading a statement conditionally accepting the proceedings, the District Court took the extraordinary step of concluding that "because of [Daniels'] past behavior and…non-responsiveness to my questions…I'm going to have Mr. Daniels watch the trial on a video" at the jail. *Id.* at App. 50-51.

Purporting to follow *United States v. Benabe*, 654 F.3d 753, 761 (7th Cir. 2011), the District Court ordered Daniels present in the courtroom on the first day of trial. App. 53-54, Sept. 10, 2012 Hr'g Tr. at 3-4. In an effort to "consistently follow[] *Benabe*," the Court announced that Daniels' pre-trial conduct would result in his exclusion from the courtroom unless he affirmatively promised to behave

8

during trial.  *Id.* at App. 55.  In response to the Court's attempt to swear him in, Daniels again attempted to conditionally accept the proceedings.  *Id.* at App. 55-56. The District Court then found that, under *Benabe*, Daniels' conduct constituted a waiver of his Sixth Amendment right to attend trial.  *Id.* at App. 58.  At that time, over his attorney's objection, Daniels was removed from the courtroom and tried in absentia.  *Id.* at App. 59-60.

### C.  The District Court Issues An Erroneous And Misleading Jury Instruction.

After declining to sever the Defendants' trial, the District Court attempted to preempt prejudice to either defendant by instructing the jurors not to consider evidence related exclusively to one robbery against a defendant not charged with committing that robbery.  App. 20, Dkt. 176 at 4.  For example, prior to the testimony of thirteen witnesses whose testimony related only to counts three and four of the indictment—for which only Daniels and Jones were charged—the Court issued the following limiting instruction: the testimony "will pertain only to the August 2005 robbery of the Bank of Lincolnwood in Skokie, Illinois … so this testimony will not relate to Defendant Dean."  Sept. 11, 2012 Tr. at 188-89. However, the Court never once gave a similar limiting instruction to prevent the jury from erroneously considering against Daniels evidence related only to the fifth and sixth Counts, for which Daniels was not charged.

In addition, the District Court erroneously instructed the jury to consider against Daniels evidence related exclusively to the robbery for which only Dean was charged.  Sept. 12, 2012 Tr. at 483.  Specifically, prior to the testimony of six

9

witnesses related exclusively to the fifth and sixth Counts—for which Daniels was not charged—the District Court explicitly instructed the jury that the testimony of these witnesses related to the "entire case." *Id.*

### D.    The District Court Fails To Conduct A Limited Inquiry Into Reported Instances Of Juror Misconduct.

On September 21, 2012, after four days of deliberation, the jury found Daniels guilty of two counts of robbery and two counts of the use of a firearm in connection with a crime of violence. App. 62, Sept. 21, 2012 Tr. at 1129.  On the same day, the jury found Defendant-Appellant Dean guilty of two counts of robbery and one related firearm count.  *Id.*

Mere hours after rendering the verdict, one of the jurors returned to the District Court judge's chambers to raise an allegation of misconduct.  App. 64-66, Sept. 24, 2012 Hr'g Tr. at 2-4; App. 97-98, Sept. 25, 2012 Hr'g Tr. at 20-21.  Unable to reach the judge, the juror left a message for the judge with an extern, stating "I cannot live with myself knowing what I did. I felt bullied into making the decision I made." App. 65, Sept. 24, 2012 Hr'g Tr. at 3.  That same afternoon, the juror took additional steps to raise this issue with the Court, leaving the following message on the judge's voicemail:

> Hi. I am going to make this brief. This is Carol Paschall. I was one of the jurors in Dean and Daniels' case today.  I am—I came back and told the judge's—some man came out of the judge's chambers that I wanted to pretty much change my verdict to not guilty because I feel I was bullied and railroaded in the jury deliberative process and I, for one, cannot live with the verdict that I—I guess handed down. And I'm trying to get a hold of someone so I could find out the two public defenders Dean and Daniels' lawyers' phone numbers and their addresses so I could send a letter to them.  If someone could give me a call back when they get a chance, phone is [omitted by trial court.]

10

*Id.* at App. 65-66.  This juror subsequently contacted Daniels' attorney to call attention to this issue.  *Id.* at App. 66-67.  Daniels' attorney, however, declined to interview her, explaining that he was "under special orders not to talk to you about your deliberations."  *Id.*

On September 24, 2012, the District Court conducted a post-trial hearing to address the juror's allegations of bullying with the parties' counsel.  At that time, the Court noted that the juror's use of the word "bullying" was ambiguous; it could simply mean she was overcome with argument from her fellow jurors, but it also raised the potential concern that "during the jury deliberation process, an outside source or some outside influence bullied her."  *Id.* at App. 69-70.  The latter of the two interpretations, the District Court noted, "could be an issue that I need to look into."  *Id.* at App. 69; *see also* App. 94, Sept. 25, 2012 Hr'g Tr. at 14.

In light of these two competing interpretations, the District Court considered a plan to "call her in and I will ask her myself in front of counsels exactly what she means when she said she was bullied and that will be the end of the conversation."  App. 71, Sept. 24, 2012 Hr'g Tr. at 10.  The District Court expressed its desire to not "wait too long so that it's fresh in the juror's mind," but did permit the Government a day to brief its opposition.  *Id.* at App. 72-73.  The Court further stated its plan to contact the juror and have her return within a day or two, depending on her availability.  *Id.* at App. 73-76.

The following day, the Court held a second hearing at which it again emphasized the need to confine the questioning, if any, to the narrow issue of the

source of the bullying.  Sept. 25, 2012 Hr'g Tr. at App. 83-90.  Thus, the Court summarized the relevant issue as:  "The sole question in my mind is the word bullying, was it by fellow jurors or by a source outside the jury.  That's the first question….And then if she says, you know, it was done by fellow jurors, answer yes to that question by fellow jurors, then did the bullying by other jurors include any threats of any physical harm to you or to any other person, that will be the end of the Court's inquiry of this juror."  *Id.* at App. 89-90.

At this same hearing, Daniels' attorney also raised information that he had just learned about this particular juror—that on at least one occasion, a panic attack forced her to leave the jury deliberation room.  *Id.* at App. 89-90.  This issue came to the attention of Daniels' attorney only after the verdict was rendered, when one of the Court Security Officers mentioned in passing that he had observed the juror sitting on the floor of the hallway outside the jury deliberation room, complaining that she was suffering from a panic attack.  *Id.*  Because it was unclear from this limited and informal description how many panic attacks the juror suffered and the timing of those attacks in relation to the deliberations, Daniels' attorney requested that the Court develop a factual record by allowing questioning of the Court Security Officer.  *Id.* at App. 92-93.

After Daniels requested to question the Court Security Officer about the panic attack incident, the District Court made an about-face and denied Daniels' request to conduct a limited inquiry into the source of the juror's bullying.  *Id.* at 28-30.  Although just moments before the District Court acknowledged that "bullied"

raised the possibility of a physical threat or outside influence, the District Court concluded, without conducting even a limited inquiry, that the juror "just wanted to change it to not guilty after she felt bad" and declined to inquire any further. *Id.* at App. 94-95, App. 99-100.

At a hearing the next day, the District Court made another disclosure with respect to the juror's panic attack—the judge had in fact personally witnessed the juror leave the jury deliberation room and that he personally heard the juror state that a verdict had already been reached. Sept. 26, 2012 Hr'g Tr. at App. 103-04. Rather than permitting Daniels' attorney to personally question the Court Security Officer, the District Court judge recounted the details of his personal, off-the-record inquiry into the officer's allegations. *Id.* at App. 104-05. The District Court indicated that the Court Security Officer had witnessed the juror leave the jury deliberation room on another occasion because "she did not want to remain in the jury room with the other jurors." *Id.* According to the District Court, the second panic attack episode also occurred after the verdict had been reached. *Id.* The District Court then declined to undertake any further inquiry into either this juror's panic attacks or charges of being bullied into a verdict and denied Daniels' motion for a mistrial on this basis. *Id.* at App. 106.

## SUMMARY OF THE ARGUMENT

The District Court erred by trying two defendants together for unconnected bank robberies. The individual robberies were temporally and geographically unrelated, and each pair of counts was charged against a distinct group of defendants. The indictment did not contain a conspiracy charge or any factual

allegations connecting the separate robberies. Joining the counts and defendants in a single indictment was erroneous under Rule 8(b). This error was not harmless because the Court failed to give proper limiting instructions to the jury and erroneously instructed the jury that evidence concerning only the charges against his co-defendant could be considered as evidence against Daniels.

The District Court also erred when it barred Daniels from attending his trial. In response to affirmative judicial questioning at three of the fifteen pre-trial hearings, Daniels read a "conditional acceptance" statement. This conduct did not justify a Sixth Amendment waiver because it did not threaten to undermine the trial. Daniels' exclusion from trial violated his Sixth Amendment right to be present in the courtroom during his criminal trial.

Additionally, the District Court erred by refusing to conduct a limited inquiry into the nature of reported juror misconduct. On at least one occasion prior to the delivery of the verdict, a juror had a panic attack outside of the jury deliberation room. Mere hours after rendering the verdict, this juror returned to the District Court judge's chambers to raise an allegation of juror misconduct. The Court noted on the record that it was unclear whether the reported misconduct was external or internal, or involved threats of or actual physical violence. The District Court's refusal to conduct a limited inquiry into the source and severity of the reported misconduct violated Daniels' Sixth Amendment right to an impartial jury.

14

Finally, to avoid duplicative briefing, Daniels joins and incorporates Dean's argument that the District Court erred by permitting the introduction of historical cell site location information in violation of his Fourth Amendment rights.

For each of these reasons, this Court should vacate Daniels' conviction and remand for a new trial.

## STANDARDS OF REVIEW

The standard of review for a claim of misjoinder is typically de novo. *United States v. Todosijevic*, 161 F.3d 479, 483 (7th Cir. 1998). However, "[w]here a defendant has waived the severance issue by neglecting to file a pre-trial motion and failing to show cause for his oversight, [this Court will] review for plain error." *United States v. Gio*, 7 F.3d 1279, 1285 (7th Cir. 1993). "In determining whether plain error exists, [this Court asks] (1) whether there was any error at all; (2) if so, whether that error was plain, i.e., clear or obvious; and (3) if the error was plain, whether it affected defendant's substantial rights, i.e., whether it affected the outcome of the case." *United States v. Recendiz*, 557 F.3d 511, 522 (7th Cir. 2009).

This Court reviews a defendant's exclusion from trial on the basis of voluntary waiver for abuse of discretion. *United States v. Watkins*, 983 F.2d 1413, 1418 (7th Cir. 1993). First, the Court must "determine whether the district court abused its discretion when it found that the accused had knowingly and voluntarily waived the right." *Id.* at 1419. The District Court's factual findings are reviewed for clear error. *Id.* Second, this Court considers "whether the court appropriately exercised its discretion in concluding that there was a controlling public interest to continue the trial in the defendant's absence." *Id.* (internal quotation marks

omitted).  Third, if this Court concludes that the District Court erred on either of these first two prongs, it considers whether the error was harmless.  *Id.*

The standard of review of an order denying motion for mistrial based on juror misconduct is abuse of discretion.  *See United States v. Vasquez-Ruiz*, 502 F.3d 700, 704 (7th Cir. 2007).  "A mistake of law is automatically an abuse of discretion."  *Id.*

## ARGUMENT

### I.   THE DISTRICT COURT'S REFUSAL TO SEVER IMPROPERLY-JOINED DEFENDANTS DEPRIVED DANIELS OF A FAIR TRIAL.

Federal Rule of Criminal Procedure 8(b) limits the joinder of multiple defendants in a single indictment to instances where the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  For purposes of Rule 8(b) joinder, separate crimes do not constitute a "series of acts or transactions" unless committed "pursuant to a common plan or common scheme, which is to say (in the usual case) that the acts or transactions are parts of a single conspiracy."  *United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985).  Where a single indictment improperly joins defendants, Rule 14(a) authorizes the district court to sever the trials "or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  "In assessing whether joinder was proper, [the Court] look[s] *solely* to the face of the indictment and not to the evidence adduced later at trial."  *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003) (emphasis added).

16

**A.    There Was Error In Joining Daniels And Dean In A Single Indictment.**

Counts 5 and 6 of the indictment have absolutely no connection to Daniels and were improperly joined in his indictment.  Counts 5 and 6 pertain to the December 2005 robbery of the First Bank—a crime allegedly committed by another defendant, in an entirely different part of the city, four months after the crimes for which Daniels was actually charged.  Notably, the Government did not charge a conspiracy.  *See United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995) ("It is well settled that a conspiracy charge is a proper basis for joinder under Rule 8(b).").  Absent a conspiracy charge, joinder is proper only where the face of the indictment contains factual allegations which connect the charges to each of the joined defendants. *See United States v. Troutman*, 546 F. Supp. 2d 610, 614-15 (N.D. Ill. 2008) (finding insufficient the first indictment, which did not charge the defendant in Count One and alleged no conspiracy, but because "the Second Superseding Indictment alleges that the crime charged…is part of…[a] five-year fraudulent scheme" there was no misjoinder); *Velasquez*, 772 F.2d at 1353 (finding joinder improper where the indictment does not contain factual allegations that charges against other defendants were made pursuant to a common plan).

Here, the indictment does not contain any factual allegations demonstrating that the separate robberies were part of a common plan or otherwise interconnected in time, place, or manner.  *See* SA 1-6.   The *only* facts provided in the indictment for each charge are: the date, address, and jurisdiction of the robbery; the amount of money taken by force or intimidation; the names of the individuals allegedly

17

involved; the fact that the money was FDIC insured; and the allegation that a firearm was used in furtherance of a violent crime. *Id.* There is not a single factual allegation describing the manner in which the robberies were perpetrated. *Id.*

The only arguable link between all three robberies is that Daniels and Dean were alleged to have participated in the first robbery together and then alleged to have separately robbed the second and third banks later in the same year. Such a connection is an insufficient basis for joinder under Rule 8(b) as a matter of law. *Velasquez*, 772 F.2d at 1353 ("[T]he mere fact that two conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into one conspiracy, one common plan or scheme."). Absent additional allegations connecting Daniels to Counts 5 and 6, the Government has impermissibly "bootstrap[ped] multiple defendants with similar but unconnected offenses into a single indictment by combining Rules 8(a) and 8(b) and the existence of overlapping defendants." *Stillo*, 57 F.3d at 557; *see Velasquez*, 772 F.2d 1352 ("[T]he government may not tack the two subsections [of Rule 8] together and in one indictment charge different persons with committing offenses of 'similar character'"); *see also United States v. Cain*, No. 94-CR-483, 1995 WL 290414, at *5 (N.D. Ill. May 10, 1995) (finding misjoinder because "a common member is insufficient unless each scheme can be linked into one conspiracy.").

**B.     The District Court Erred By Denying Dean's Motion For Severance.**

Notwithstanding the absence of connecting factual allegations in the indictment, in response to Dean's motion to sever, the District Court found that it was "clear in the indictment" that Daniels and Dean were "charged with participating in 'the same series of acts or transactions' since the bank robberies at issue are interrelated, both because they were allegedly perpetrated by the same group of individuals and because they were allegedly perpetrated in the same manner." App. 15, Dkt. 52 at 9.  Specifically, the Court found that the "allegations showing that the same group of individuals committed the bank robberies at issue using a consistent *modus operandi* are sufficient to meet the joinder requirements of Rule 8." *Id.*

The indictment, however, does not support these findings.  There is simply no indication that the defendants from each pair of counts committed the separate robberies using a "consistent *modus operandi*."  Nor is there any indication that the defendants from one robbery helped plan the acts giving rise to the others, or any reason to believe the separate robberies were part of a common scheme to share in any proceeds.  Absent *any* factual allegations in the indictment describing the manner in which the robberies were perpetrated, the District Court erred by relying on that basis to uphold the defendants' joinder and deny severance.

**C.     Daniels Suffered Actual Prejudice Depriving Him Of The Right To A Fair Trial.**

Reversal of a denial to sever on the basis of misjoinder is required where, as here, the defendant suffered "actual prejudice that deprived him of his right to a

fair trial." *United States v. Olson*, 450 F.3d 655, 677 (7th Cir. 2006); *see United States v. Lane*, 474 U.S. 438, 449 (1986).  Prior to the testimony of six witnesses whose testimony related exclusively to the robberies charged in Counts 5 and 6, the District Court instructed the jury that the following testimony applied to the "charges in the entire case." Sept. 12, 2012 Tr. at 483.  This instruction was erroneous and highly prejudicial because the testimony of those six witnesses related exclusively to a robbery for which Daniels was not charged and with which he was improperly joined.  The testimony that followed this instruction was undeniably damaging: (i) details of the First Bank Robbery; (ii) the presence of large quantities of cash in a witness's apartment; (iii) an all cash purchase of a car the month after the robbery; (iv) police investigation tactics and surveillance of a co-defendant; and (v) the details of a consent search of a co-defendant's vehicle.  *Id.* at 484-568.  The jurors were explicitly instructed that this testimony applied to the charges in the entire case, and presumably followed that instruction when reaching their verdict against Daniels.  *Id.* at 483; *United States v. Eberhart*, 434 F.3d 935, 939 (7th Cir. 2006) ("We presume that jurors follow instructions given them.")

The District Court's error is even greater when considered in conjunction with its other limiting instructions.  Throughout the trial, prior to the testimony of witnesses related exclusively to the charges against Daniels, the Court issued a limiting instruction ordering the jury not to consider that testimony with respect to Dean. Sept. 12, 2012 Tr. at 428, 432, 444; Sept. 13, 2012 Tr. at 591-92.  Never once, however, did the District Court issue a similar instruction to protect Daniels.

In sum, the District Court not only improperly joined Daniels' trial, causing it to be filled with testimony and evidence relevant only to unrelated counts, but also instructed the jury that evidence irrelevant to Daniels' charges applied to the entire case. There can be no question that this erroneous limiting instruction caused "actual prejudice that deprived [Daniels] of his right to a fair trial." *Olson*, 450 F.3d at 677; *see also Lane*, 474 U.S. at 450 (finding misjoinder harmless only where evidence relevant to misjoined count was preceded by a "proper limiting instruction" and the court's jury charge "repeated that instruction and admonished the jury to consider each count and defendant separately").

## II.    THE DISTRICT COURT VIOLATED DANIELS' SIXTH AMENDMENT RIGHT TO ATTEND TRIAL.

The District Court violated one of Daniels' most fundamental constitutional rights—the right to attend his own criminal trial. The Confrontation Clause of the Sixth Amendment provides that: "In all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const. amend. VI. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). This right is further secured through the Due Process Clauses of the Fifth and Fourteenth Amendments, which require that a defendant be present "to the extent that a fair and just hearing would be thwarted by his absence." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); s*ee also United States v. Gagnon,* 470 U.S. 522, 526 (1985) (A defendant in a criminal case has "a due process right to be present at a proceeding 'whenever his presence has a

21

relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'").

Given the significance of a defendant's right to attend trial, "removal of the accused...will rarely be justified." *United States v. Benabe*, 654 F.3d 753, 761 (7th Cir. 2011). Prior to excluding a defendant from trial, courts are required to "indulge every reasonable presumption against the loss of constitutional rights." *Watkins*, 983 F.2d at 1418 (quoting *Allen*, 397 U.S. at 343). Where a district court has barred a criminal defendant from attending his trial, this Court undertakes a three-part inquiry: (i) whether the defendant voluntarily waived his right to attend; (ii) whether a controlling public interest existed to continue the trial in the defendant's absence; and (iii) if this Court concludes that the District Court erred *either* in finding a knowing and voluntary waiver *or* in continuing the trial in the defendant's absence, whether the defendant's absence was harmless. *See id.* at 1418-19.

Rather than indulging every reasonable presumption against the loss of Daniels' constitutional rights, as the law requires, the District Court did the opposite and presumed, based on Daniels' non-responsive answers and the past conduct of "some prison inmates," that Daniels would be disruptive during trial. Aug. 2, 2012 Hr'g Tr. at 9, 16. Indeed, after Daniels first attempted to "conditionally accept" the proceedings, the District Court began an effort to lay the groundwork to justify excluding Daniels from his trial. *Id.* Although he would later use Daniels' "conditional acceptance" statements against him, the Court never rejected Daniels' statements or ordered him to refrain from making them. To the

22

contrary, the Court instructed Daniels to continue reading these statements and indicated that Daniels had a right to address the Court in that fashion. App. 48, Sept. 5, 2012 Hr'g Tr. at 27. After engaging with Daniels and encouraging him to continue, the Court then used this "non-responsive" conduct to justify stripping Daniels of his Sixth Amendment right to attend trial. *Id.* at 50-51. This is error under *Allen* and *Benabe* because Daniels' conduct did not threaten to undermine the ability of the other defendants and the government to have a fair trial. For these reasons, explained more fully below, the District Court violated Daniels' Sixth Amendment right to attend his criminal trial.

### A. Daniels' Pre-trial Conduct Did Not Constitute An Implied Voluntary Waiver.

A court may take "the extraordinary step" of barring a criminal defendant from attending his trial only after the defendant knowingly and voluntarily waives his right to attend. *Benabe*, 654 F.3d at 761. In exceptional circumstances, waiver may be implied on the basis of the defendant's pre-trial conduct. *Id.* To constitute an implied voluntary waiver, however, the defendant's conduct cannot be "merely disruptive." *Tatum v. United States*, 703 A.2d 1218, 1223-24 (D.C. 1997) ("Behavior that is merely disruptive is insufficient under *Allen* to justify removal."). Rather, a defendant's conduct must be "so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 342-43; *Benabe*, 654 F.3d at 761 (affirming exclusion of defendants where their conduct was intended to "disrupt the trial and undermine the ability of the other defendants and the government to have a fair trial"); *see also Tatum*, 703 A.2d at

1223-24 (exclusion from trial is proper "only when [the defendant's] behavior is extreme, abusive, disrespectful, or likely to hinder seriously the progress of the trial").

      1.    The District Court Erroneously Applied *Benabe* And Excluded Daniels After He Articulated A "Sovereign" Jurisdictional Theory.

The District Court relied heavily on purported similarities between Daniels' conduct and the conduct of the defendants in *United States v. Benabe* to conclude that Daniels had knowingly and voluntarily waived his right to attend trial. App. 53-55, App. 59-60, Sept. 10, 2012 Tr. at 3-5, 9-10. Finding that "*Benabe* is point by point exactly what's happening," *id*. at App. 59-60, the District Court used *Benabe* as a blueprint to exclude Daniels after he articulated a sovereignty-based jurisdictional theory. This was error. Unlike the defendants in *Benabe*, Daniels' conduct did not threaten to undermine the ability of the government and other participants to have a fair trial.

By excluding Daniels, the District Court erroneously extended *Benabe* far beyond its own language and the confines of *Allen*. *Benabe* does not hold that all defendants who assert a particular jurisdictional theory may be excluded from trial. Rather, it explains that disruptive assertions of previously dismissed legal theories may contribute to the behavioral basis supporting a Sixth Amendment waiver. *See Benabe*, 654 F.3d at 767. ("Rather than acknowledging the court's ruling [on the issue of sovereignty], these defendants continued to interrupt the proceedings in a campaign to obstruct the trial."). Although the disruptions in *Benabe* sounded in a theory of individual sovereignty, the defendants waived their Sixth Amendment

24

right by, among other disruptive and disrespectful actions, continually asserting that argument after it had been clearly rejected by the Court. *Id.* Far from an "extraordinary step," the District Court in this case treated waiver as the ordinary process for dealing with "sovereign" defendants, regardless of whether the defendant's conduct reasonably threatened to undermine the trial. This is not *Benabe*'s holding, and is error under both *Benabe* and *Allen*.

> 2. Daniels Pre-Trial Conduct Did Not Threaten The Court's Ability To Hold A Fair Trial.

At three of fifteen pre-trial hearings, in response to judicial questioning, Daniels read a statement conditionally accepting the proceedings. *E.g.*, App. 47-48, Sept. 5, 2012 Hr'g Tr. at 26-27. The District Court engaged with Daniels and encouraged him to continue in this fashion. *Id.* at App. 48 ("I'm not telling you you don't have the right to tell me what you like to but what are you trying to tell me?"). This "non-responsiveness," *id.* at App. 50-51, was not a "sufficiently reliable indicator" that Daniels intended to "disrupt the trial and undermine the ability of the other defendants and the government to have a fair trial." *Benabe*, 654 F.3d at 761, 767-68. Accordingly, Daniels did not knowingly and voluntarily waive his Sixth Amendment right to attend trial.

Daniels' conduct was materially different from the "tandem campaign" of "obstreperous interruptions" and continued assertions of previously dismissed legal arguments that resulted in a waiver in *Benabe*. *First*, Daniels conduct was questioned at far fewer hearings than the defendants in *Benabe*. *Second*, Daniels' non-responsiveness was not obstreperous and did not threaten to taint the jury or

obstruct the trial.  *Third,* the District Court never rejected Daniels' assertions, and thus Daniels' conduct was not characterized by the stubborn defiance that defined the defendants' conduct in *Benabe.*  *Fourth*, in light of his prior conduct, Daniels' failure to promise not to disrupt the trial was not a reliable indicator of future disruption.

> a.  The *Benabe* defendants engaged in a "tandem campaign of obstreperous interruptions and frivolous legal arguments."

Exclusion of the *Benabe* defendants was justified on the basis of their "frequent and undeterred outbursts."  *Benabe*, 654 F.3d at 766.  Over the course of at least seven pre-trial hearings, the *Benabe* defendants "regularly spoke out of turn, sidelined the legitimate business of the court…were relentless in their interruptions, [and] consistently attempt[ed] to derail nearly every pre-trial status conference they attended."  *Id.*  Specifically, the *Benabe* defendants:

- Continuously interrupted the Court and continued to do so despite repeated requests to remain silent.

- Imposed irrelevant and nonsensical demands on the Court, such as demanding "an explanation of the gold fringe on the flag in the courtroom…."

- Attempted to "seize [the court's] agenda.

*Id.* at 762-63.  These outbursts were "obstructive, disrespectful, and potentially inflammatory," and specifically designed to inhibit the government's ability to continue with the prosecution.  *Id.* at 766.

In addition to these repeated outbursts, the *Benabe* defendants continued to assert legal arguments the court had previously dismissed both orally and in a

lengthy written opinion. *Id.* at 767. Despite the court's instruction to the defendants to refrain from continually asserting these theories, the *Benabe* defendants continued to sideline the court by making the same arguments, giving rise to a "valid concern that [the defendants] would continue on their campaign of confusion and obstruction in the presence of the jury." *Id.* Through this "tandem campaign of obstreperous interruptions and frivolous legal arguments" the *Benabe* defendants "knowingly and voluntarily waived their right to be present a[t] trial." *Id.* at 769.

> b.  Daniels' pre-trial conduct was materially different from the defendants' conduct in *Benabe*.

The same cannot be said about Daniels' pre-trial conduct. Unlike the *Benabe* defendants' obstreperous interruptions, the record reflects that Daniels attended and remained *entirely silent* at nearly every pre-trial hearing held over the course of this trial's history. Indeed, it was only at three pre-trial hearings that Daniels spoke at all—never once engaging in an obstreperous disruption.

During the first of these hearings, held to determine whether Daniels wished to proceed pro se, the Court directly addressed Daniels and asked him whether he desired to waive his right to counsel. Aug. 2, 2012 Hr'g Tr. at 10. In response to the Court's questioning, Daniels read a conditional acceptance statement. *Id.* The Court invited Daniels to "continue with [his] recital." *Id.* at 12. At no point did Daniels intentionally interrupt the Court or exemplify any conduct that would derail or disrupt the proceedings.

At the second hearing, Daniels attempted to speak, not by interrupting the Court, but by raising his hand in response to the Court's request if there was "anything else we need to address today." Aug. 29, 2012 Hr'g Tr. at 3. When the Court denied Daniels' request to speak, and noted that he does not "entertain questions from defendants who are represented by counsel," Daniels twice asked whether he was being denied the right to speak on his own behalf. *Id.* at 3-4, 6. In response to these sixteen words spoken out of turn, the District Court had Daniels forcibly removed from the courtroom. *Id.* at 6; App. 49-50, Sept. 5, 2012 Hr'g Tr. at 28-29.

During the third hearing, the Court addressed Daniels' lawyer and asked him whether Daniels had decided to "be civil in the courtroom and let the procedures take place." App. 45-46, Sept. 5, 2012 Hr'g Tr. at 24-25. Daniels' attorney responded that Daniels had a right to be present in the courtroom and asked to "just leave it at that at this point." *Id.* Refusing to "leave it at that," the Court directly and preemptively addressed Daniels to inform him that if he became disruptive during trial the Court would have "no alternative" but to exclude him. *Id.* at App. 46-47. Again, in response to the Court's direct questioning, Daniels read a conditional acceptance statement. *Id.* at App. 47-48. At this point, the Court informed Daniels that he had the right to address the Court in that fashion, but requested further clarification from Daniels. *Id.* at App. 48. At the end of this colloquy, the District Court ruled that "because of [Daniels'] past behavior

and…non-responsiveness to my questions…I'm going to have Mr. Daniels watch the

trial on video…." *Id.* at App. 50-51.

         c.     Daniels pre-trial conduct did not threaten to obstruct the
                  trial and was thus not a knowing and voluntary waiver
                  under *Benabe*.

     The District Court erred when he found that Daniels knowingly and

voluntarily waived his right to attend trial because Daniels' conduct did not

threaten to prevent the government or Daniels' co-defendant from having a fair trial

and was thus not a knowing and voluntary waiver under *Benabe*.  In *Benabe*, the

defendants "consistently attempt[ed] to derail nearly every pre-trial status

conference," by engaging in a "campaign of confusion and obstruction."  *Benabe*, 654

F.3d at 766-77.  In contrast, Daniels spoke at only three of fifteen hearings over the

course of three years.

     More importantly, Daniels' conduct—reading a statement in response to

affirmative judicial questioning—was neither obstreperous nor interruptive, and

thus the *Benabe* court's concern that the conduct would derail and disrupt the trial

is entirely absent.  Unlike the *Benabe* defendants, who regularly spoke out of turn

and interrupted the judge and other participants, Daniels spoke without first being

addressed by the Court during only two hearings throughout the case's entire three-

year history (a better record than many attorneys), and on one occasion raised his

hand prior to speaking.  These instances total fewer than fifty words of the record, a

stark contrast to the five pages this Court devoted to *summarizing* the defendants'

outbursts in *Benabe*.

Unlike the obstreperous interruptions in *Benabe*, Daniels' conduct, at worst, amounted to non-responsiveness to direct questioning.  Where the need to exclude disruptive defendants stems from a fear that the defendants' behavior is unpredictable and may disrupt the trial in front of the jury, *see Benabe*, 654 F.3d at 765, non-responsiveness is an insufficient basis to support a Sixth Amendment waiver.  It is neither unpredictable nor difficult to control in front of a jury and thus does not undermine the ability of the other defendants and the government to have a fair trial.  Recognizing Daniels' propensity to "conditionally accept" the proceedings before responding to questions, rather than resorting to a Sixth Amendment waiver, the Court could have simply directed at-trial inquiry to counsel—as it always does with represented defendants.

Additionally, unlike *Benabe*, the District Court never rejected and at times encouraged Daniels' statements.  One half of the "tandem campaign" that justified exclusion in *Benabe* was the defendants' insistence upon continually raising legal arguments that the court had already rejected.  *See id.* at 767.  In contrast, the Court here did not reject Daniels' assertion that the Court lacked jurisdiction until the moment he relied on it as a basis to exclude Daniels from attending his trial.  In light of this, Daniels' responses cannot be characterized by the stubborn defiance that in part gave rise to the waiver in *Benabe*.

Nevertheless, because Daniels' statement reminded the District Court of "boiler plate language" read by "some prison inmates," the Court preemptively resorted to *Benabe* during the first hearing at which Daniels attempted to

30

conditionally accept the proceedings. Aug. 2, 2012 Hr'g Tr. at 9, 16.  Later, not having an actually obstreperous defendant, the District Court unnecessarily forced the issue by affirmatively engaging Daniels and eliciting from him again the same response he had previously given.  Sept. 5, 2012 Hr'g Tr. at App. 45-47.  Then, rather than ruling on the substance of Daniels' responses (as the court did in *Benabe*), the District Court goaded Daniels to continue by informing him he had a right to address the Court in that fashion.  *Id.* at App. 48.  The Court then used that exact conduct against Daniels as a basis to support a Sixth Amendment waiver.  *Id.* at App. 50-51.

This premature resort to *Benabe* resulted in the District Court ticking off the *Benabe* boxes by asking Daniels to promise to behave during his trial.  App. 55, Sept. 10, 2012 Hr'g Tr. at 5.  To this, Daniels responded—as he had before when addressed directly—by attempting to conditionally accept the proceedings.  *Id.* at App. 55-59.  The District Court's ultimatum was unreasonable in light of Daniels' prior conduct.[6]  But even if the District Court's question was proper in this case, Daniels' response did not justify his exclusion.  In *Benabe*, it was "the combination" of the defendants' obstructive behavior *and* their refusal to promise to behave that was a "sufficiently reliable indicator of trouble."  *Id.* at 766-67.  In contrast, Daniels' answer here was merely a continuation of his prior non-responsive answers.  Far

---

[6]  *Benabe* does not instruct trial judges to give every defendant an ultimatum.  In *Benabe*, the court's demand "was reasonable" only after the defendants' "repeated outbursts" and "ongoing disrespect for the court, the prosecution . . . counsel, and the proceedings."  654 F.3d at 767.

from additional evidence of future trouble, Daniels' failure in this instance to become suddenly responsive was a "sufficiently reliable indicator" only of his intention to remain non-responsive moving forward—behavior that itself did not threaten to undermine the trial and that at the previous hearing the Court assured Daniels he had a right to continue. App. 48, Sept. 5, 2012 Hr'g Tr. at 27; *see also* Aug. 2, 2012 Hr'g Tr. at 12 ("Continue with your recital."); App. 56, Sept. 10, 2012 Tr. at 6 ("Go ahead. Speak.").

Daniels' conduct was insufficient to justify a knowing and voluntary waiver of his right to attend trial. Unlike the "campaign to obstruct the proceedings" in *Benabe*, Daniels' responses to the Court's questions merely made it challenging to substantively engage with him. This conduct was not obstreperous but rather occurred in response to affirmative judicial questioning. Because Daniels' conduct did not threaten to undermine the ability of the other defendants and the government to have a fair trial, Daniels' exclusion from trial violated his Sixth Amendment right.

> ### B.    No Controlling Public Interest Demanded Daniels' Trial To Be Conducted In His Absence.

A defendant may only be excluded from trial where he has voluntarily and knowingly waived the right to attend *and* a controlling public interest requires the trial to continue despite the defendant's absence. *See Watkins*, 983 F.2d at 1419. Whether a controlling public interest exists rests on a variety of factors: "the likelihood that the trial can take place with the defendant present, the difficulty of rescheduling, and the burden on the government and inconvenience to jurors of

having to undertake two trials, particularly in a multiple defendant case." *See id.* (internal citations omitted). Significantly, throughout this inquiry, the court must be mindful of the Supreme Court's mandate to "indulge in every reasonable presumption against the loss of constitutional rights." *Id.* (quoting *Allen*, 397 U.S. at 343).

As a threshold matter, the Court need not undertake this second inquiry into the existence of a controlling public interest where, as here, the defendant's conduct did not amount to a voluntary waiver of his Sixth Amendment right. *See id.* at 1419 (controlling public interest analysis is necessary only "if [the court] determine[s] that the [trial] court found proper waiver"). As explained in Section II.A, Daniels' pre-trial conduct did not constitute a voluntary waiver. Thus, under the *Watkins* framework, this Court need not address the presence of a controlling public interest. But should this Court choose to do so, the District Court's minimal findings on this issue were an abuse of discretion.

*First*, the Court erred when weighing whether "the trial can take place with the defendant present." *Id.* at 1419. The District Court expressed concern that Daniels' conduct might "taint the jury" and "require a new trial." Sept. 10, 2012 Tr. at 5. Yet the very conduct that concerned the Court—Daniels recitation of a conditional acceptance statement when directly questioned—was predictable and easily controllable in front of the jury.

To alleviate any concern that Daniels' conditional acceptance statement may have tainted the trial, the Court could have simply refrained from questioning

Daniels in the presence of the jury and instead directed all questions to his counsel—as is the Court's practice with represented defendants. The District Court had no reasonable basis to conclude that Daniels would suddenly start reciting this statement unprompted. The District Court's analysis of this factor demonstrates its failure to properly apply the law by indulging in every—or even *any*—reasonable presumption against the loss of Daniels' constitutional rights. *See Watkins*, 983 F.2d at 1418.

*Second*, conducting two trials would have presented no additional burden on the trial court. In fact, it would have been a proper application of Federal Rule of Criminal Procedure 8(b). As detailed in Section I, Daniels and Dean were improperly joined on Counts 5 and 6 of the indictment, and should not have been tried together.

### C.    Daniels' Exclusion From Trial Was Not Harmless.

Where, as here, the District Court improperly found a voluntary waiver and controlling public interest, the Government must prove that "the error is harmless beyond a reasonable doubt and failed to create 'any reasonable possibility of prejudice.'" *Watkins*, 983 F.2d at 1422 (quoting *United States v. Toliver*, 541 F.2d 958, 964-65 (2d Cir. 1976)). "This standard of review puts a heavy burden on the government." *Id.* (citing *Chapman v. California*, 386 U.S. 18 (1967)). In this case the Government cannot carry this onerous burden.

There is considerable support that erroneous exclusion from an entire trial can never be harmless. *See, e.g.*, *United States v. Ward*, 598 F.3d 1054, 1060 (8th Cir. 2010) (rejecting harmless error where the defendant was improperly excluded

from his entire trial); *Tatum*, 703 A.2d at 1224 ("This court has expressly held that the erroneous exclusion of a defendant during the testimony of a witness can almost never be harmless because it infringes the defendant's rights under the Sixth Amendment."); *United States v. Crutcher*, 405 F.2d 239, 244 (2d Cir. 1968) (rejecting harmless error for absence during jury selection, for "there is no way to assess the extent of the prejudice, if any, a defendant might suffer by not being able to advise his attorney during the impanelling of the jury").

However, whether or not erroneous exclusion from an entire criminal trial can ever be harmless, the Government cannot establish that it was harmless beyond a reasonable doubt in this case. Because of his erroneous exclusion, Daniels was unable to assist his attorney in selecting the jury. Numerous witnesses testified against him outside of his presence. And in his absence, Daniels could not offer timely assistance to his attorney and suggest areas to explore on cross examination. Although there is no way to assess the full extent of the harm caused by Daniels' exclusion, it unquestionably created a reasonable possibility of prejudice and the government cannot carry its burden of showing that the error was "harmless beyond a reasonable doubt." *Watkins*, 983 F.2d at 1422.

## III. THE DISTRICT COURT ERRED BY REFUSING TO CONDUCT A LIMITED INQUIRY INTO THE SOURCE AND SEVERITY OF REPORTED JUROR MISCONDUCT.

The District Court's refusal to conduct a limited inquiry into reported instances of juror misconduct was an abuse of discretion. Hours after rendering the verdict, one of the jurors informed the District Court that she had been "bullied" and "railroaded" in reaching her verdict. App. 64-66, Sept. 24, 2012 Hr'g Tr. at 2-4;

App. 97-98, Sept. 25, 2012 Hr'g Tr. at 20-21.  The juror left this message with the judge's extern as well as on the voicemail of both the District Court and Daniels' attorney, apprising them of this situation and offering to follow up with additional detail.  App. 64-66, Sept. 24, 2012 Hr'g Tr. at 2-4.  While her report unmistakably alleged that she had been "bullied" and "railroaded," the juror's brief message did not indicate the source of this bullying—whether it was external or internal to the jury—nor the type of bullying—whether it was physical violence or verbal abuse.

"If outside contacts may have affected the jury, due process requires some form of hearing."  *United States v. McClinton*, 135 F.3d 1178, 1186 (7th Cir. 1998). Where, as here, a juror raises an allegation that may involve prejudicial external influence the court should conduct a limited investigation and determine whether there may have been a violation of the Sixth Amendment right to an impartial jury. *Id.*; *see also United States v. Shakelford*, 777 F.2d 1141, 1145 (6th Cir. 1985) ("A trial court's refusal to permit an evidentiary hearing may constitute abuse of discretion when the alleged jury misconduct involves extrinsic influences."); *United States v. Brantley*, 733 F.2d 1429, 1439 (11th Cir. 1984) ("A party claiming that an improperly influenced jury returned a verdict against him must be given an opportunity to prove that claim.").

In addition to instances in which outside contacts may have affected the jury, this Court has previously approved the use of a limited inquiry to rule out physical violence as the basis for a jury misconduct claim.  In *United States v. Briggs*, a juror alleged that she had been "intimidated" by the other jurors, but did not provide any

explicit suggestion "that any extraneous information or outside influence had been brought to the jury's attention." 291 F.3d 958, 961-62 (7th Cir. 2002). Even after denying the defendant's mistrial, "because the court [remained] concerned that 'intimidation' could mean physical intimidation of some sort," the *Briggs* court permitted the defendant's attorney to contact the juror to conduct the limited factual development necessary to ensure that there were no physical threats of violence involved. *Id.* at 962. The *Briggs* court permitted this inquiry into the juror's use of the word "intimidation" because, similar to "bullying," it can be used to describe threats of physical violence—a fact the District Court here openly acknowledged. *E.g.*, Sept. 25, 2012 Hr'g Tr. at 5. ("And I commented at the last hearing, the word bullied states outside influence can be physical threat during the jury deliberation process, then I might need to inquire about what bullied was about, the term bullied.").

In response to the juror's allegations of bullying, Daniels' and Deans' attorneys requested the Court undertake a *narrow inquiry* limited to questioning the juror about the source and severity of the alleged misconduct. App. 68-69, Sept. 24, 2012 Hr'g Tr. 6-7. This limited inquiry was a necessary, first step for the court to properly apply Federal Rule of Evidence 606(b). Rule 606(b) prohibits a juror from "testify[ing] about any statement made or incident that occurred during the jury's deliberations," for the purpose of challenging the verdict; however, the rule carves out three fundamental exceptions which permit juror testimony about whether: (i) extraneous prejudicial information was improperly brought to the jury's

attention; (ii) an outside influence was improperly brought to bear on any juror; or (iii) a mistake was made in entering the verdict on the verdict form. Fed. R. Evid. 606(b). Without knowing whether the bullying came from an external source or involved a threat of violence—possibilities the court itself recognized—the District Court could not properly apply Rule 606(b). *See* App. 69, Sept. 24, 2012 Hr'g Tr. at 7; App. 87, Sept. 25, 2012 Hr'g Tr. at 5. A correct application of this rule was fundamental to safeguarding the Defendants' Sixth Amendment right, for it "draws a line in the sand between evidence of outside influences on the jury's deliberative process and evidence of the jury's own internal processes. Evidence of outside influence is not just admissible; it triggers a presumption of prejudice." *United States v. Torres-Chavez*, 744 F.3d 988, 997 (7th Cir. 2014) (internal citations omitted).

The District Court erred by failing to conduct the requested limited inquiry. Only after such an inquiry could the District Court properly resolve the application of Rule 606(b) to the juror's bullying allegations. Had the inquiry uncovered that the reported bullying came from an outside source or involved threats of physical violence, Rule 606(b) would have triggered an exception, permitting further investigation by the District Court. *See* Fed. R. Evid. 606(b)(ii); *Anderson v. Miller*, 346 F.3d 315, 327 (2d Cir. 2003) (noting that "credible allegations of threats of violence leveled by one juror by another" may fall within a 606(b) exception); *United States v. Lakhani*, 480 F.3d 171, 185 (3d Cir. 2007) (noting that comments carrying "the coercive force of threats" could be treated as "extraneous influences"). Instead,

the District Court acknowledged that the juror's message left open these questions yet still, and without explanation, declined to conduct the inquiry. *See* App. 69, Sept. 24, 2012 Hr'g Tr. at 7; App. 87, Sept. 25, 2012 Hr'g Tr. at 5 (the bullying may have come in the form of a "physical threat during the jury deliberations" or perhaps an "outside source or some outside influence bullied her [and] that could be an issue that [the court] need[s] to look into"); App. 69, Sept. 24, 2012 Hr'g Tr. at 7; App. 87, Sept. 25, 2012 Hr'g Tr. at 5.

In addition to its improper handling of the bullying allegation, the District Court similarly erred in addressing Defendants' concerns regarding the same juror's panic attacks and potential incapacity. Neither the Court nor Defendants' counsel were informed prior to the verdict's entry that a Court Security Officer observed this same juror suffer a panic attack causing her to leave the jury room at some point after the jury began deliberations. App. 90-91, Sept. 25, 2012 Hr'g Tr. at 8-9. Raising possible concerns of the juror's capacity, Daniels' attorney requested that the Court permit the parties to question the Court Security Officer to develop a factual record. *Id.* at App. 96. This questioning—aimed at establishing the frequency and timing of the panic attacks—would be the necessary ground work for determining whether any further consideration was warranted. Indeed, if the panic attacks happened numerous times throughout deliberations, the Court would need to further investigate whether this juror was capable of rendering an impartial verdict.

Instead of developing this record in court, the District Court—off the record, outside of the presence of counsel and the Defendants, absent any of the procedural safeguards of the limited inquiry requested by Defendants—interviewed the Court Security Officer "to ascertain when and if the juror in question stepped out of the jury room." App. 103, Sept. 26, 2012 Hr'g Tr. at 2. Based on the District Court's own finding that "the stepping out of the jury room by the juror on [the two reported] occasions happened after the jury had reached a verdict in this case," the District Court denied defendants' motion for a mistrial based on juror incapacity. App. 77-82, Dkt. 205-07.

*      *      *

In sum, the District Court failed to take preliminary steps necessary to properly exercise its judicial discretion with respect to both the juror's bullying allegation and the Defendants' concerns about the juror's capacity. As a result, the District Court had an insufficient basis to conclude that the juror misconduct claim did not include threats of violence or outside influence, and that the juror's panic attacks posed no capacity concerns. Where a juror—who was forced to leave the jury deliberation room due to panic attacks—raised concerns of being "bullied," and the District Court acknowledged that the juror's allegations left open the possibility of external influence or threats of physical violence, it was an abuse of the District Court's discretion to apply Rule 606(b) without first conducting a limited inquiry into the source and severity of the alleged bullying and the frequency of the juror's panic attacks. Absent a factual basis to conclude that impermissible juror taint did

not occur, the District Court abused its discretion in denying Defendants' request for a limited inquiry and subsequent motion for a mistrial.  App. 99-101, Sept. 25, 2012 Hr'g Tr. at 28-30; App. 77-82, Dkt. 205-07.

## IV.    THE DISTRICT COURT ERRED IN PERMITTING THE INTRODUCTION OF HISTORICAL CELL SITE LOCATION DATA IN VIOLATION OF THE FOURTH AMENDMENT.

To avoid duplicative briefing of this issue, Daniels joins the background discussion and argument in Dean's brief on appeal.  *See* Brief and Short Required Appendix of Defendant-Appellant Dahveed Dean, Part IV.

## CONCLUSION

For the reasons explained above, this Court should remand Daniels' case for a new trial.

Dated: July 7, 2014                               Respectfully submitted,

                                                  /s/ *Sallie G. Smylie*
                                                  Sallie G. Smylie (Counsel of Record)
                                                  Christa C. Cottrell
                                                  Anne I. Salomon
                                                  Nicholas F. Wasdin
                                                  KIRKLAND & ELLIS LLP
                                                  300 North LaSalle Street
                                                  Chicago, Illinois 60654
                                                  (312) 862-2000

                                                  *Attorneys for Defendant-Appellant,*
                                                  *Terrance Daniels*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32</u>

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, I hereby certify that this brief complies with the stated type-volume limitations.  The text of this brief was prepared in Century Schoolbook 12 point font, with footnotes in Century Schoolbook 11 point font.  All portions of this brief, other than the Disclosure Statement, Table of Contents, Table of Authorities, and Certificates of Counsel, contain 10,474 words.  This certification is based on the word count function of Microsoft Office's word processing software, which was used in preparing this brief.

Dated: July  7, 2014                         Respectfully submitted,

                                             /s/ *Sallie G. Smylie*
                                             Sallie G. Smylie (Counsel of Record)
                                             Christa C. Cottrell
                                             Anne I. Salomon
                                             Nicholas F. Wasdin
                                             KIRKLAND & ELLIS LLP
                                             300 North LaSalle Street
                                             Chicago, Illinois 60654
                                             (312) 862-2000

                                             *Attorneys for Defendant-Appellant,*
                                             *Terrance Daniels*

# CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30

Pursuant to Circuit Rule 30(d), counsel hereby certifies that all materials required by Circuit Rule 30(a) and (b) are included in the appendices.

Dated: July  7, 2014                          Respectfully submitted,

                                              /s/ *Sallie G. Smylie*
                                              Sallie G. Smylie (Counsel of Record)
                                              Christa C. Cottrell
                                              Anne I. Salomon
                                              Nicholas F. Wasdin
                                              KIRKLAND & ELLIS LLP
                                              300 North LaSalle Street
                                              Chicago, Illinois 60654
                                              (312) 862-2000

                                              *Attorneys for Defendant-Appellant,*
                                              *Terrance Daniels*

## CIRCUIT RULE 31(E) CERTIFICATION

The undersigned hereby certifies that she has filed electronically, pursuant to

Circuit Rule 31(e), versions of the brief and all of the appendix items that are

available in PDF format.

Dated: July 7, 2014                          Respectfully submitted,

                                             /s/ *Sallie Smylie*
                                             Sallie G. Smylie (Counsel of Record)
                                             Christa C. Cottrell
                                             Anne I. Salomon
                                             Nicholas F. Wasdin
                                             KIRKLAND & ELLIS LLP
                                             300 North LaSalle Street
                                             Chicago, Illinois 60654
                                             (312) 862-2000

                                             *Attorneys for Defendant-Appellant,*
                                             *Terrance Daniels*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 23, 2014, in accordance with the Court's order of July 22, 2014, she caused a true and correct copy of the corrected BRIEF AND REQUIRED SHORT APPENDIX OF DEFENDANT-APPELLANT TERRANCE DANIELS to be filed with the Court by electronic means using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: July 23, 2014                    Respectfully submitted,

                                        /s/ *Sallie G. Smylie*
                                        Sallie G. Smylie (Counsel of Record)
                                        Christa C. Cottrell
                                        Anne I. Salomon
                                        Nicholas F. Wasdin
                                        KIRKLAND & ELLIS LLP
                                        300 North LaSalle Street
                                        Chicago, Illinois 60654
                                        (312) 862-2000

                                        *Attorneys for Defendant-Appellant,*
                                        *Terrance Daniels*

## TABLE OF CONTENTS FOR REQUIRED SHORT APPENDIX

Page SA-

May 5, 2009 Indictment (Dkt. No. 1)…………………………………………….....…1

May 2, 2013 Sentencing Hearing Transcript Excerpt (Dkt. No. 271)……………….…7

May 2, 2013 Judgment in a Criminal Case (Dkt. No. 257)……………………..……10

May 17, 2013 Notice of Appeal (Dkt. No. 259)……………………………………….16

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **09 CR  446** |
| | ) | |
| v. | ) | Violations: Title 18, United States |
| | ) | Code, Sections 924(c)(1)(A), |
| DAHVEED DEAN, | ) | 2113(a), and 2 JUDGE DER-YEGHIAYAN |
| TERRANCE DANIELS, and | ) | MAGISTRATE JUDGE DENLOW |
| ALBERT JONES | ) | |

## COUNT ONE

The SPECIAL FEBRUARY 2008-1 GRAND JURY charges:

On or about August 2, 2005, at South Holland, in the Northern District of Illinois, Eastern

Division,

DAHVEED DEAN, and
TERRANCE DANIELS,

defendants herein, by force, violence and by intimidation, did take from the person and presence of

bank employees approximately $46,726 belonging to and in the care, custody, control, management,

and possession of the First National Bank, located at 200 West 162nd Street, South Holland, Illinois,

the deposits of which were then insured by the Federal Deposit Insurance Corporation;

In violation of Title 18, United States Code, Sections 2113(a) and 2.

**FILED**

MAY 1 2 2009  TC
May 12, 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

1

## COUNT TWO

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about August 2, 2005, at South Holland, in the Northern District of Illinois, Eastern Division,

DAHVEED DEAN, and
TERRANCE DANIELS,

defendants herein, used and carried a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, bank robbery, a violation of Title 18, United States Code, Section 2113(a), as more fully set forth in Count One of this indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

2

## COUNT THREE

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about August 25, 2005, at Skokie, in the Northern District of Illinois, Eastern Division,

TERRANCE DANIELS, and
ALBERT JONES,

defendants herein, by force, violence and by intimidation, did take from the person and presence of

bank employees approximately $79,300 belonging to and in the care, custody, control, management,

and possession of the Bank of Lincolnwood, located at  8047 Skokie Boulevard, Skokie, Illinois,

the deposits of which were then insured by the Federal Deposit Insurance Corporation;

In violation of Title 18, United States Code, Sections 2113(a) and 2.

3

## COUNT FOUR

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about August 25, 2005, at Skokie, in the Northern District of Illinois, Eastern Division,

TERRANCE DANIELS, and
ALBERT JONES,

defendants herein, used and carried a firearm during and in relation to a crime of violence for which

they may be prosecuted in a court of the United States, namely, bank robbery, a violation of Title 18,

United States Code, Section 2113(a), as more fully set forth in Count Three of this indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

4

## COUNT FIVE

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about December 20, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

DAHVEED DEAN,

defendant herein, by force, violence and by intimidation, did take from the person and presence of bank employees approximately $187,624 belonging to and in the care, custody, control, management, and possession of the First Bank, located at 2356 South Kedzie, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation;

In violation of Title 18, United States Code, Sections 2113(a) and 2.

5

## COUNT SIX

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about December 20, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

### DAHVEED DEAN,

defendant herein, used and carried a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, bank robbery, a violation of Title 18, United States Code, Section 2113(a),  as more fully set forth in Count Five of this indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

A TRUE BILL:

_____

FOREPERSON

_____
UNITED STATES ATTORNEY

6

1                    IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
2                          EASTERN DIVISION

3
UNITED STATES OF AMERICA,          ) Docket No. 09 CR 446-2
4                                  )
          Government,              )
5                                  ) Chicago, Illinois
               vs.                 ) May 2, 2013
6                                  ) 1:30 o'clock p.m.
TERRANCE DANIELS (2),              )
7                                  )
          Defendant.              )
8

9              TRANSCRIPT OF PROCEEDINGS - Sentencing
             BEFORE THE HONORABLE SAMUEL DER-YEGHIAYAN
10

11   APPEARANCES:
     For the Government:      HON. GARY S. SHAPIRO
12                           UNITED STATES ATTORNEY'S OFFICE
                             BY:  MS. MARGARET JEAN SCHNEIDER
13                           219 South Dearborn Street
                             Suite 500
14                           Chicago, Illinois  60604

15   For Defendant Daniels:  ATTORNEY AT LAW
                             BY:  MR. ROBERT G. CLARKE
16                           123 West Madison Street
                             Chicago, Illinois  60603
17
     Also Present:           U.S. PROBATION OFFICE
18                           BY:  MR. GREGORY SMITH
                             55 West Monroe Street
19                           Suite 1500
                             Chicago, Illinois  60603
20

21

22
                  LAURA LACIEN, CSR, RMR, FCRR, CRR
23                     Official Court Reporter
                219 South Dearborn Street, Suite 1902
24                    Chicago, Illinois  60604
                          (312) 408-5032
25

1    indicate to both sides that -- and as part of my sentencing

2    decision -- all of the underlying factual information

3    supporting the recommendation of the probation officer with

4    respect to this defendant's sentence is contained in the

5    version of the PSR both parties have received prior to

6    sentencing.

7            As the parties know, there is a portion that you

8    received from the Probation Department, which is an arm of

9    the court, and there is another portion that the Court

10   receives as part of the recommendation of Probation

11   Department.  And that portion, whatever is in there, is in

12   the PSR and I'm not considering anything in any portion that

13   both sides have not received in sentencing this defendant;

14   and I do so in every case.

15           MS. SCHNEIDER:  Thank you, Judge.

16           THE COURT:  Pursuant to the Sentencing Reform Act of

17   1984, it is the judgment of the Court that Defendant Terrance

18   Daniels is hereby committed to the custody of the Bureau of

19   Prisons to be imprisoned for concurrent terms -- not

20   consecutive but concurrent terms of 151 months on Counts 1

21   and 3.  That's the low end of the advisory guideline range.

22           In addition, the defendant is hereby sentenced on

23   Counts 2 and 4 to consecutive terms of imprisonment of 300

24   months on each count to be served consecutively to the

25   concurrent terms of imprisonment imposed in Counts 1 and 3.

1  Therefore, the total term of imprisonment is 751 months.

2          The Court finds that the defendant does not have the

3  ability to pay a fine.  The Court will waive the fine in this

4  case.  The defendant shall pay restitution jointly and

5  severally with co-defendant Albert Jones in the amount of

6  $79,300 to Republic Bank, formerly the Bank Lincolnwood, 2221

7  Camden Court, Oak Brook, Illinois, 60523, less any amounts

8  that have been paid; and the Court can order that

9  immediate -- due immediately.  The defendant -- because it is

10 under, as we discussed earlier, it is under 18 U.S.C. 3663.

11 Let me get the exact citation which is 18 U.S.C. 3663(a).

12          The defendant shall pay restitution jointly and

13 severally with co-defendant Dahveed Dean and Marcus Moore in

14 the amount of $46,726 to First National Bank, 200 West 162nd

15 Street, South Holland, Illinois 60473, once again, under the

16 same statute 18 U.S.C. 3663(a) due immediately.  The Court

17 finds that the defendant does not have the ability to pay

18 interest on the court-ordered restitution.  The Court will

19 waive the interest requirement in this case.

20          A total special assessment of $400, $100 per count,

21 must be imposed and it is due immediately.  Upon release from

22 imprisonment, the defendant shall be placed on supervised

23 release for concurrent terms of three years on Counts 1 and 3

24 and five years on Count 2 and 4.  Within 72 hours of release

25 from custody of the Bureau of Prisons, the defendant shall

AO 245B  (Rev. 09/11) Case: 16 -2982 nal Case Document: 31    Filed: 07/23/2014    Pages: 70
Sheet 1

# UNITED STATES DISTRICT COURT

Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| | ) | |
| Terrance Daniels | ) | Case Number:      09 CR 446-2 |
| | ) | |
| | ) | USM Number:      02546-089 |
| | ) | |
| | ) | Robert G. Clarke |
| | | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

X was found guilty on count(s)     One, Two, Three, and Four of the Indictment
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2113(a) | Bank Robbery | 08/25/2005 | I |
| 18 U.S.C. § 924(c)(1)(A) | Carrying a Firearm in Connection to a Crime of Violence | 08/25/2005 | II |
| 18 U.S.C. § 2113(a) | Bank Robbery | 08/25/2005 | III |
| 18 U.S.C. § 924(c)(1)(A) | Carrying a Firearm in Connection to a Crime of Violence | 08/25/2005 | IV |

    The defendant is sentenced as provided in pages 2 through    6    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)         ☐ is   ☐ are   dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

                            May 2, 2013
                            Date of Imposition of Judgment

                            *Samuel Der-Yeghiayan*
                            Signature of Judge

                            Samuel Der-Yeghiayan, United States District Court Judge
                            Name and Title of Judge

                            May 2, 2013
                            Date

AO 245B    (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page    2    of    6

DEFENDANT:          Terrance Daniels
CASE NUMBER:        09 CR 446-2

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:        751 months.

151 months on each of Counts One and Three with said Counts to run concurrent to one another. 300 months on Count 2 to run consecutively to Counts 1, 3, and 4 and 300 months on Count 4 to run consecutively to Counts 1, 2, and 3 for a total term of 751 months.

☐  The court makes the following recommendations to the Bureau of Prisons:

X  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m.  ☐ p.m.   on _____ .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
    DEPUTY UNITED STATES MARSHAL

SA-11

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:          Terrance Daniels
CASE NUMBER:        09 CR 446-2

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     5 years.
3 years on each of Counts 1 and 3 and 5 years on each of Counts 2 and 4 with all Counts to run concurrently to one another for a total term of 5 years.

        The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

X  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

X  The defendant shall cooperate in the collection of DNA as directed by the probation office if such sample is authorized by statute.

☐  The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐  The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

        If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

        The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___6___

DEFENDANT:        Terrance Daniels
CASE NUMBER:      09 CR 446-2

## ADDITIONAL SUPERVISED RELEASE TERMS

1) The Defendant shall pay any financial penalty that is imposed by this judgment, and that remains unpaid at the commencement of the term of supervised release, at a rate of 10 percent of his net monthly income.

2) The Defendant shall provide the probation officer with access to any requested financial information.

DEFENDANT:        Terrance Daniels
CASE NUMBER:    09 CR 446-2

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  400.00 | $  0.00 | $  126,026.00 |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| **Republic Bank**<br>Formerly Bank of Lincolnwood<br>2221 Camden Court<br>Oak Brook, Illinois 60523 | | $79,300.00 | |
| **First National Bank**<br>200 West 162nd Street<br>South Holland, Illinois 60473 | | $46,726.00 | |

**TOTALS**        $ _____        $  126,026.00

☐  Restitution amount ordered pursuant to plea agreement   $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

X    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    X   the interest requirement is waived for the    ☐  fine   X  restitution.

    ☐   the interest requirement for the    ☐  fine   ☐  restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/08 Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Case 1:09-cr-00446 Document #: 257 Filed: 05/02/13 Page 6 of 6 PageID #:1548
Case: 13-2082    Document: 31    Filed: 07/23/2014    Pages: 70

Judgment — Page   6   of   6

DEFENDANT:     Terrance Daniels
CASE NUMBER:    09 CR 446-2

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**   X   Payment of      $126,426.00     due immediately, balance due

     ☐   not later than              , or
     X   in accordance    ☐ C,   ☐ D,   ☐ E, or   X F below; or

**B**   ☐   Payment to begin immediately (may be combined with    ☐ C,     ☐ D, or    ☐ F below); or

**C**   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
     _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
     _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   X   Special instructions regarding the payment of criminal monetary penalties:

     The Defendant shall pay any financial penalty that is imposed by this judgment, and that remains unpaid at the
commencement of the term of supervised release, at a rate of 10 percent of his net monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

X   Joint and Several

     Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

     1) Defendant Terrance Daniels (09 CR 446-2) jointly and severally with Co-Defendant Albert Jones (09 CR 446-3) in the amount of $79,300.00 to Republic Bank.
     2) Defendant Terrance Daniels (09 CR 446-2) jointly and severally with Co-Defendant Dahveed Dean (09 CR 446-1) and with Defendant Marcus Moore (08 CR 105) in the amount of $46,726.00.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | 09 CR 446 |
| | ) | |
| Terrance Daniels | ) | |

NOTICE OF APPEAL

Notice is hereby given that Terrance Daniels, defendant in the above named case hereby

appeals to the United States Court of Appeals for the Seventh Circuit from the final judgment

and commitment order entered in this action on May 7, 2013.

Dated tus 17th day of May, 2013

s/Robert G. Clarke
123 W. Madison Suite 1500
Chicago, Ill. 60602
312-332-3101
prestidigitate@sbcglobal.net
Attorney for Terrance Daniels

Notice of Filing and Certificate of Service

The undersigned certifies that using the CM/ECF system he filed this Notice of Appeal and served it on, Margaret Schneider, Assistant   United States Attorney, 219 S. Dearborn St. Chicago, Ill. 60604 on May 17, 2013.

s/Robert G. Clarke, Attorney